GLACIER GENERAL ASSURANCE
COMPANY, Plaintiff–Appellee,

v.

G. GORDON SYMONS CO., LTD., and
Canadian Market Management, Ltd.,
Defendants–Appellants.

No. 78–2041.

United States Court of Appeals,

Ninth Circuit.

Argued and Submitted June 4, 1980.

Decided Oct. 23, 1980.

Martin Quinn, Pettit & Martin, San Francisco, Cal., argued, for defendants–appellants; Sherman V. Lohn, Garlington, Lohn & Robinson, Missoula, Mont., on brief.

John O. Mudd, Missoula, Mont. (argued), Dexter L. Delaney, Missoula, Mont., on brief, for plaintiff–appellee.

Before SKOPIL and FARRIS, Circuit Judges, and THOMPSON,* District Judge.

FARRIS, Circuit Judge:

G. Gordon Symons Co. and Canadian Market Management, Ltd., appeal the district court's judgment holding them liable to Glacier General Assurance Co. for $200,-369.22, the amount Glacier paid to Hudson's Costume Rental on a Glacier fire insurance policy which was written by Canadian, a subsidiary of Symons. Symons argues that 1) it should not be held responsible for the acts of its subsidiary, Canadian, 2) the evidence does not support the district court's holding that Canadian was not authorized to write the Hudson's policy, and 3) Glacier is a real party in interest only to the extent of $50,092.60. We affirm.

Glacier General Assurance Company is a multiple line insurance company incorporated and having its principal place of business in Montana. G. Gordon Symons, Ltd., is a Canadian corporation engaged in the insurance business as a broker and agent for insurance companies. Canadian Market Management, Ltd., is a subsidiary of Symons and is an insurance broker.

Early in 1974, representatives of Glacier, Symons, and Canadian Market Management met to discuss the possibility of Glacier taking over the business of Financial Fire and Casualty Company, which was in financial difficulty. Symons also proposed writing new business for Glacier. As a result of this meeting, Glacier authorized Symons and its subsidiary, Canadian, to write Glacier fire insurance policies for the unexpired terms of policies that had been written by Financial Fire and Casualty. Whether Glacier also authorized Symons and Canadian to write new business is the subject of this dispute.

On March 20, 1974, Symons requested that Glacier execute an instrument entitled "Addendum C." Upon execution, that instrument would have appointed Symons and Canadian general worldwide agents for Glacier in the property insurance field. Although Glacier never signed Addendum C, Canadian issued a Glacier fire insurance policy to a new customer, Hudson's Costume Rental, on June 3, 1974. On July 28, 1974, a fire destroyed Hudson's. Glacier paid Hudson's $196,562.42 for the loss and $3,806.80 for expenses. Several reinsurers reimbursed Glacier for all but $50,092.60 of the loss.

Glacier brought this suit in federal court against Symons and Canadian for fraud and for exceeding the scope of their agency. Jurisdiction is founded on 28 U.S.C. § 1332, the parties being of diverse citizenship. Although rejecting the fraud claim, the district court concluded that Canadian exceeded its authority when it issued the Glacier policy to Hudson's, that Symons was responsible for the acts of Canadian Market Management, and that Symons and Canadian were liable to Glacier for the amount

---

* Honorable Bruce R. Thompson, Senior U.S. District Judge for the District of Nevada, sitting by designation.

paid by Glacier to Hudson's, plus interest. Symons and Canadian appeal.

■ Symons contends that it had nothing to do with issuing Hudson's fire insurance policy and, therefore, should not be held liable for Hudson's loss. The district court rejected this contention, finding that Canadian was a wholly–owned subsidiary and agent of Symons. We will uphold this finding unless it is clearly erroneous. *Faberge, Inc. v. Saxony Products, Inc.*, 605 F.2d 426 (9th Cir. 1979). The record indicates that G. Gordon Symons was president of both Symons and Canadian and was chairman of the board of the "Symons group companies." Both companies worked out of the same offices and shared the same employees. Symons was involved in all major discussions with Glacier concerning writing fire insurance, and he was involved in the decision to allow Canadian to write Hudson's policy. The district court's conclusion was not clearly erroneous.

■ Symons next contends that the district court's finding that Canadian was unauthorized to write Hudson's policy is not supported by the evidence. The record contains conflicting evidence as to what agreement existed between Glacier and the Symons companies. Both parties agree that Glacier authorized Symons to write policies covering risks which were presently insured by a company experiencing financial difficulty, Financial Fire and Casualty Exchange. Hudson's was not, however, insured by Financial. Symons argues that a letter from Glacier's vice president, Chapman, authorized Symons, with certain limitations, to write new fire insurance policies. Symons also contends that if Glacier actually intended that Symons write only risks previously insured by Financial Fire and Casualty, it would have expressly communicated this limitation to Symons.

On the other hand, Glacier contends, and the district court found, that it agreed to consider individual risks not previously covered by Financial Fire and Casualty on an individual submission basis. This finding is compatible with Chapman's letter to Symons and with the alleged lack of a definitive statement from Glacier expressly limiting Symons' authority to issuing policies covering risks insured by Financial Fire and Casualty. Two additional facts support the district court's conclusion. First, the authority Symons claims to have possessed was outlined in Addendum C, which Symons sent Glacier. Glacier never signed this addendum and specifically refused to do so in a letter written on March 28, 1974. Second, after Hudson's loss, Alan Symons, vice president of both Canadian and Symons, admitted that the Symons' companies lacked the authority outlined in Addendum C. The district court's finding was not clearly erroneous.

Symons also contends that even if Glacier did not explicitly authorize the Symons' companies to write new business, Glacier should bear Hudson's loss because its instructions to Symons with regard to writing fire insurance policies were vague and ambiguous. The district court found, however, that not only did Symons lack authority to insure Hudson's, but Symons was aware of its lack of authority. In light of Glacier's refusal to sign Addendum C, Alan Symons' statement acknowledging his company's lack of the unlimited authority outlined in Addendum C, and the requirement in the master agency agreement between Symons and Glacier that all grants of authority be in writing, we cannot conclude that the district court's finding is clearly erroneous.

Symons' final contention is that Glacier is a real party in interest only to the extent that it has not been reimbursed by other insurance companies for the sum it paid to Hudson's. Because the question of the proper parties to bring an action is procedural, *Virginia Electric & Power Co. ex rel. Insurance Co. of North America v. Westinghouse Electric Corp.*, 485 F.2d 78, 83 (4th Cir. 1973), *cert. denied*, 415 U.S. 935, 94 S.Ct. 1450, 39 L.Ed.2d 493 (1974), federal law governs the question even in diversity actions such as this. Fed.R.Civ.P. 17(a) requires that every action be prosecuted in the name of the real party in interest. The identity of the real party in interest, however, depends on the legal relationships of

the parties under applicable substantive law. *Virginia Electric*, 485 F.2d at 83. In this case that law is Montana's.

Glacier has reinsured 75% of its risk with reinsurers not parties to this action. The Supreme Court of Montana has adopted the following statement as representing Montana law:

> [T]he insured may prosecute an action for the full amount of the loss, or either the insured or the insurer may separately sue for his portion of the loss, and if the action is instituted by either one alone, the defendant can compel joinder of the other or may waive joinder.

*State ex rel. Slovak v. District Court*, 166 Mont. 485, 489–90, 534 P.2d 850, 852 (1975) (emphasis omitted) (quoting 44 Am.Jur.2d *Insurance* § 1853, at 783–84 (1969)). Under Montana substantive law, the underlying relationship between Glacier and its reinsurers is one of partial subrogation and Glacier may collect from the defendants, Symons and Canadian, for the entire loss. We must accept this as an authoritative statement of the legal relationship of parties to this dispute. As we have noted, determination of the real party in interest from the underlying legal relationships is a matter of federal law. *Virginia Electric*, 485 F.2d at 83. Under federal law a partial subrogor is a real party in interest as to the entire claim when the subrogor is entitled to enforce the entire claim and payment to the subrogor will completely extinguish the defendant's liability. *Id.* at 83–84. We therefore hold that Glacier is a real party in interest as to, and may maintain an action to recover, the entire claim.

Although the second portion of the above statement indicates that defendants may force joinder of the reinsurers under Montana procedure, this aspect of Montana law does not bind us. The ability to force joinder of a nonparty in a diversity action is a matter of federal law governed by Fed.R.Civ.P. 19. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 125 n.22, 88 S.Ct. 733, 746 n.22, 19 L.Ed.2d 936 (1968). Federal courts have differed as to whether Fed.R.Civ.P. 19(a) makes a partial subrogee of a plaintiff a

person to be joined if feasible, or a necessary party. *Compare Virginia Electric*, 485 F.2d at 85 (partial subrogee a necessary party), *and Public Service Co. v. Black & Veatch*, 467 F.2d 1143, 1144–45 (10th Cir. 1972) (same), *and Jefferson v. Ametek, Inc.*, 86 F.R.D. 425, 430 (D.Md.1980) (same), *with Dudley v. Smith*, 504 F.2d 979, 983 & n.6 (5th Cir. 1974) (partial subrogee not a necessary party after 1966 amendment of rule 19), *and Prudential Lines v. General Tire International Co.*, 74 F.R.D. 474, 475–76 (S.D.N.Y.1977) (partial subrogee not a necessary party), *and Cleaves v. De Lauder*, 302 F.Supp. 36, 38 (N.D.W.Va.1969) (same). *See also Edwards, Inc. v. Arlen Realty & Development Corp.*, 466 F.Supp. 505, 511–14 (D.S.C.1978) (criticizing, but following, Fourth Circuit rule).

Rule 19 provides:

> (a) Persons to be Joined if Feasible. A person ... shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. . . .

We hold that the reinsurers are not necessary parties under this standard. The district court granted complete relief among the parties. Disposition of this action in the absence of the reinsurers will not impair or impede their ability to protect their interests because Glacier's recovery is impressed with a trust for the reinsurers in the amounts they are entitled to receive by principles of subrogation. 3A Moore's Federal Practice ¶ 17.09[2.–1], at 17–107 to –108 (2d ed. 1979); *see, e. g., Braniff Airways v. Falkingham*, 20 F.R.D. 141, 144–45 (D.Minn. 1957). Finally, Symons and Canadian are protected from future actions by the reinsurers. *See Virginia Electric*, 485 F.2d at 84 & n.15. Where, as here, a plaintiff brings a suit for an entire claim even

though the plaintiff's insurance company has partially reimbursed the loss, the insurance company is not a necessary party.

Affirmed.