Donald A. SHELDON, Appellant,

and

Ellwood-Knitting Mills, Inc.

v.

WEST BEND EQUIPMENT CORPORA-
TION, a corporation, F.M.C. Corpora-
tion, a corporation, Appellees,

and

Alles-Southeast Corporation, a
corporation.

Deering-Milliken, Inc., Third
Party Defendant.

No. 82–5494.

United States Court of Appeals,
Third Circuit.

Argued March 16, 1983.

Decided Oct. 7, 1983.

**604**

Albert G. Feczko, Jr., Feczko & Seymour, Pittsburgh, Pa., for appellant Donald A. Sheldon.

Robert S. Grigsby, Carl E. Harvison (argued), Thomson, Rhodes & Grigsby, Pittsburgh, Pa., for appellee West Bend Equipment Corp.

Sidney R. Finkel (argued), Dusty L. Elias, Baskin & Sears, P.C., Pittsburgh, Pa., for appellee F.M.C. Corp.

Before ADAMS and GARTH, Circuit Judges, and ACKERMAN, District Judge.*

---

* Honorable Harold A. Ackerman, United States District Court for the District of New Jersey, sitting by designation.

## OPINION OF THE COURT

HAROLD A. ACKERMAN, District Judge:

Appellant Donald A. Sheldon appeals from an order of the district court denying his motion for a new trial after a jury verdict in favor of defendants. Because we find that appellant Sheldon's employer, Ellwood-Knitting Mills, Inc., (Ellwood) was improperly joined as an involuntary plaintiff, and because we cannot conclude that this joinder was harmless, we reverse.

### I

This diversity action was initiated to recover damages for injuries allegedly sustained in a fall from an elevated man-lift, known as a "Rider Boy", on January 6, 1978. The incident apparently occurred when Sheldon attempted to lift the box from the man-lift to a shelf by pulling on a strap placed around the box for the purpose of keeping it closed. As he did so, the seal or bond joining the strap allegedly separated, causing Sheldon to lose his balance and fall.

Sheldon brought suit against the manufacturer of the man-lift, West Bend Equipment Corporation (West Bend); the manufacturer of the strap and strap bonding machine, F.M.C. Corporation (F.M.C.); and the seller of the strap, Alles-Southeast Corporation (Alles). On motion by West Bend, the district court ordered that Ellwood, appellant's employer, be joined as an involuntary plaintiff.

The case proceeded to trial bifurcated as to liability and damages. Sheldon's theory of liability as to each defendant rested solely upon the doctrine of strict products liability under Section 402A of the Restatement (Second) of Torts. At the close of plaintiff's case in the first phase of the trial, the district court granted Alles' motion for a directed verdict, and no appeal is taken therefrom.

Thereafter, following its charge, the district court presented the jury with six "Special Verdict" questions as follows:

1. Was the Rider Boy sold to Ellwood-Knitting Mills, Inc., by West Bend Equipment Corporation in March, 1962 defectively designed?

Answer: Yes or No _____

Only if your answer to Question No. 1 is "Yes", answer Question No. 2.

2. Was the defectively designed Rider Boy a proximate cause or a substantial factor in bringing about the injuries of Donald Sheldon on January 6, 1978?

Answer: Yes or No _____

3. Was the plastic strap manufactured by F.M.C. Corporation defective when it was sold by F.M.C. Corporation?

Answer: Yes or No _____

Only if your answer to Question No. 3 is "Yes", answer Question No. 4.

4. Was the defective strap a proximate cause or a substantial factor in bringing about the injuries to Donald Sheldon on January 6, 1978?

Answer: Yes or No _____

Only if your answer to Question No. 2 or Question No. 4 is "Yes", answer Question No. 5.

If your answers to Question No. 1 and Question No. 3 are both "No", do not answer Question No. 5; the case is over and you should sign the Special Verdict and return it to the court.

5. Was Donald Sheldon's employer, Ellwood-Knitting Mills, Inc., negligent?

Answer: Yes or No _____

Only if your answer to Question No. 5 is "Yes", answer Question No. 6.

6. Was the negligence of plaintiff's employer, Ellwood-Knitting Mills, Inc., a proximate cause or a substantial factor in bringing about the injuries to its employee, Donald Sheldon?

Answer: Yes or No _____

The jury answered "No" to both Questions 1 and 3. Judgment was thereafter entered by the district court in favor of West Bend and F.M.C.

The man-lift used by Sheldon had been sold to Ellwood in 1962 through an independent sales representative. It is self-propelled and consists of a base and an elevating platform. An operator can maneuver the man-lift around the shop floor and, by utilizing the lift mechanism, raise the platform to any height up to approximately 15 feet above the floor. The machine was used by Ellwood's employees in a storage room to store and retrieve boxes of yarn as necessary.

When delivered to Ellwood in 1962, the elevating platform portion of the man-lift was guarded on the front and back by fixed railings, and on both sides by safety chains attached to the railings. These chains were attached to rings welded to the outside of the railing uprights. The chains each had a snap fastener at one end to allow opening and closing. At the base of the platform a one-quarter inch thick steel support plate was attached beyond the outermost point of the rings, and a rubber bumper was placed on each of the machine's four corners.

At the time of the incident out of which this action arose, all of the machine's bumpers as well as its safety chains were missing, and three of its four welded rings had broken off from the railing uprights. Sheldon was then in the midst of using the man-lift to raise an 82 pound box of yarn up to a shelf located approximately 12 feet above the floor. Because of an air conditioning duct which obstructed the path of the man-lift, Sheldon could only maneuver it to within approximately eight inches of the shelf.

Sheldon has no recollection of the events which followed. Harold Lund, Ellwood's plant manager, was the only eyewitness. He testified that he saw Sheldon take hold of the strap which bound the box and attempt to lift it up and over onto the shelf. He then saw Sheldon falling backwards off the man-lift and onto the floor. Sheldon allegedly struck his head on the concrete floor, suffering severe injuries and epilepsy as a result.

## II.

Since the Supreme Court's decision in *Provident Tradesmen Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), the federal courts have consistently held that in diversity cases the question of joinder under Rule 19 of the Federal Rules of Civil Procedure is governed by federal law. *E.g., Glacier General Assurance Co. v. G. Gordon Symons Co., Ltd.,* 631 F.2d 131 (9th Cir.1980). While, as the Supreme Court noted, state law questions may arise in determining what interest the "outsider" or party to be joined actually has, "the ultimate question whether, given those state-defined interests, a federal court may proceed without the outsider is a federal matter." *Provident Bank,* 390 U.S. at 125 n. 22, 88 S.Ct. at 746 n. 22. Thus Pennsylvania law is applicable here only insofar as it is necessary to make determinations regarding Ellwood's status and Pennsylvania's substantive law of torts as required under Rule 19(a).[1]

▇▇▇ The joinder of an outsider as an involuntary plaintiff is authorized by the second half of the third sentence of Rule 19(a). The purpose of this procedure is to mitigate some of the harshness that occasionally results when the joinder of a non-party is found to be desirable but the outsider refuses to join in the action. 7 C. Wright & A. Miller, *Federal Practice and Procedure: Civil* § 1606 at 49 (1972). *See also* Harris & Macklin, *The Involuntary Plaintiff: Handling the Problem of the Unwilling Plaintiff,* 17 S.Tex.L.J. 399 (1976).

The Rule provides that an outsider may be joined as an involuntary plaintiff only in "a proper case." While this term is left undefined by the Rules themselves, the Advisory Committee Note to the original rule and the cases cited therein suggest that this provision may only be invoked where the party to be joined (1) has an obligation to permit its name or title to be used to protect rights asserted in the action; (2) is beyond the jurisdiction of the court; and (3) has refused to voluntarily join in the action following notification thereof. *See Independent Wireless Telegraph Co. v. Radio Corporation of America,* 269 U.S. 459, 46 S.Ct. 166, 70 L.Ed. 357 (1926). *See also Caprio v. Wilson,* 513 F.2d 837, 839 (9th Cir.1975); *Merck & Co. v. Smith,* 261 F.2d 162 (3d Cir.1958).[2] It is improper to order the joinder under Rule 19(a) of an involuntary plaintiff if complete relief can be afforded in his absence. 7 C. Wright & A. Miller at § 1606, p. 15 (Supp.1983).

Thus, in determining in the present case whether the joinder of Ellwood as an involuntary plaintiff was proper we must ask, first, whether it had a duty to permit Sheldon to use its name to protect the rights asserted in the action; second, whether complete relief could have been afforded in its absence; and third, whether Ellwood was beyond the jurisdiction of the district court and had refused to join the action voluntarily.

▇▇▇ Here Ellwood had no legal obligation to permit Sheldon to use its name, title

---

1. Rule 19(a) provides, in pertinent part,
   (a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he

be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff.

2. A common application of this procedure has been by exclusive licensees of patents and copyrights seeking to force the owner of the monopoly to join in the prosecution of infringement suits. *E.g., Ferrera v. Rodale Press, Inc.,* 54 F.R.D. 3 (E.D.Pa.1972).
   If the party to be joined can be found with the jurisdiction and refuses to join the action as a plaintiff voluntarily, he must be served with process and made a defendant. 7 C. Wright & A. Miller at § 1606, p. 51, and cases cited therein.

or status in his action, nor did Sheldon have any need to assert them. None of the defendants had any potential liability to Ellwood; indeed, the only party in such a position was Sheldon, by reason of Pennsylvania's law of subrogation.[3] The defendants did not, however, face a risk of incurring double or inconsistent obligations by reason of Ellwood's subrogation rights, since under Pennsylvania law an injured party and his subrogee may bring only one action against a wrongdoer for damages arising out of an alleged tort, and a judgment on the merits would constitute a bar to any subsequent action against defendant by either. *Fields v. Philadelphia Rapid Transit Co.*, 273 Pa. 282, 117 A. 59 (167, 124 A.2d 620 (1956). Further, the defendants cannot, under Pennsylvania law, have any hope of recovering some or all of any judgment awarded against them from Ellwood in indemnification, since Ellwood's liability is statutorily limited to the schedule of workers compensation awards. *See* 77 Pa. Stat.Ann. § 481. Certainly in these circumstances complete relief for plaintiff could have been ensured in Ellwood's absence. Finally, while the record does not indicate whether or not Ellwood refused to join the action voluntarily, the district court did find that Ellwood was "a corporate citizen of Pennsylvania ... subject to service of process...." *Sheldon v. West Bend Electric Corp.*, 502 F.Supp. 256 (W.D.Pa.1980). Thus, we must conclude that this was not a proper case for the involuntary joinder of Ellwood as a plaintiff.[4]

Appellees contend that, even if it was improper to have joined Ellwood as an involuntary plaintiff, such joinder constituted harmless error. We disagree. The record indicates that Ellwood's status as an involuntary plaintiff was actively exploited to inject the issue of negligence into the trial. Despite the use by the district court of special jury interrogatories, and despite the fact that the jury never reached the negligence issue presented it, we are unable to conclude that Ellwood's joinder was harmless because interrogatories 5 and 6 clearly put the question of Ellwood's negligence before the jury. The district court's judgment must therefore be reversed and the matter remanded for a new trial.

### III.

Because our disposition of this appeal will require a new trial, it may be useful to briefly discuss two other issues which are likely to arise again and with which we have had difficulty.

The first of these involves the district court's jury charge regarding substantial change in a product. On this issue the district court charged as follows:

> The defendant, West Bend, contends that there was a substantial change in the Rider Boy, and because of the substantial change it is not liable.

> Now, the test in determining whether or not there was a substantial change in the Rider Boy is as follows:

> If West Bend Equipment Corporation could reasonably foresee or expect that the chains and/or bumpers would be removed from the man-lift by the buyer, there is no substantial change.

> If the defendant, West Bend, could not reasonably foresee or expect the chains and/or bumpers would be removed by the buyer, there was a substantial change.

> And if you find there was a substantial change in the Rider Boy, you should answer question number one [as to whether

---

**3.** Under Pennsylvania law, Ellwood or its insurance carrier could have had a right of subrogation against any recovery by Sheldon from the defendants in the amount of the workers compensation award he received. *See* § 319 of the Pennsylvania Workers Compensation Act, 77 Pa.Stat.Ann. § 671.

**4.** We note that because of the absolute bar of the Pennsylvania Workers Compensation Act,

77 P.S., § 481, Ellwood could not have been joined as a defendant. *Tsarnas v. Jones & Laughlin Steel Corp.*, 488 Pa. 513, 412 A.2d 1094 (1980). *See also Heckendorn v. Consolidated Rail Corp.*, —— Pa. ——, 465 A.2d 609 (Pa.1983), *affirming*, 293 Pa.Super. 474, 439 A.2d 674 (1981) (involuntary joinder of an employer as a defendant is not permissible under the Pa. Workers Comp. Act.)

**608**

the Rider Boy was defectively designed] no.

This portion of the district court's charge failed to adequately explain the role of causation in a substantial change defense. The Supreme Court of Pennsylvania has stated that establishing "whether the changes were themselves the cause of the defect" is a critical element of a substantial change defense in a products liability case. *Kuisis v. Baldwin-Lima-Hamilton Corp.,* 457 Pa. 321, 319 A.2d 914 (1974). Without adequate instruction on causation, a jury could find that the Rider Boy was in a defective or unreasonably dangerous condition when delivered; that Ellwood had made a substantial change on the Rider Boy which could not have been foreseen but which in no way caused the injuries to Sheldon; and then erroneously conclude that West Bend was not liable simply because of the substantial change. Such a substantial change would properly only be relevant, of course, if absent the change the injury would not have occurred.

The second issue which may arise again on remand is the district court's failure to instruct the jury to the effect that the intended use of a product includes any use which is reasonably foreseeable to the seller. In the course of the trial, the district court admitted into evidence testimony presented by F.M.C. suggesting that the only intended use of the strap in question was to bind the contents of the carton. By so doing, the issue of the foreseeability of various uses for the strap was injected into the case. In *Schell v. AMF, Inc.,* we stated that under Pennsylvania law, " 'whether a particular use of a product is abnormal depends upon whether the use was reasonably foreseeable to the seller.' " 567 F.2d 1259 (3d Cir.1977), quoting *Kuisis,* 457 Pa. at 321 n. 13, 319 A.2d at 921 n. 13. Thus, because of the district court's failure to adequately instruct the jury on this issue, the jury could have found that Sheldon's use of the strap to lift the carton up onto the shelf was not an intended use, even if such a use could have been reasonably foreseeable to F.M.C. On remand, once evidence is admit-

ted as to whether a given use is intended or abnormal, the district court should, if requested, charge the jury that the intended use of a product includes all those which are reasonably foreseeable to the seller.

The judgment of the district court will be vacated and the matter remanded for further proceedings consistent with this opinion.