STATE SECURITY INSURANCE
COMPANY, Plaintiff,

v.

FRANK B. HALL & CO., INC., et
al., Defendants.

No. 81 C 4167.

United States District Court,
N.D. Illinois, E.D.

Jan. 29, 1986.

Leonard M. Ring & Associates, Chicago, for plaintiff.

James A. Vroman, Winston & Strawn, Chicago, for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

This Court's December 13, 1985 memorandum opinion and order, 109 F.R.D. 95 (the "Opinion"), addressed the "collateral source" question raised by counsel for State Security Insurance Company ("State Security") in response to an in limine motion filed by Frank B. Hall & Co., Inc. and Frank B. Hall & Co. of Texas, Inc. (collectively "Halls"). In the course of its discussion, the Opinion identified a jurisdictional question neither litigant had raised (or, obviously, discussed).[1] Now, in response to the directive in the Opinion, id. at 98, both State Security and Halls have filed memoranda—each litigant opposing the joinder of State Security's insurers as plaintiffs.[2]

1. This opinion will assume familiarity with the Opinion. It will not repeat either the factual statement or the substantive analysis of the Opinion, except to the extent required for current discussion.

2. Ironically enough, State Security—which had originally fought for its potential recovery in this action to be undiminished by what State Security termed the "collateral source" of its reinsurance recoveries—has now thought better of that argument (which had disclosed to this Court for the first time the existence of State Security's reinsurers and consequently the potential absence of subject matter jurisdiction). State Security now embraces with alacrity the constructive trust it had flatly rejected when

Nonetheless this Court dismisses this action for lack of subject matter jurisdiction.

■ Both the litigants and this Court have a major investment in this lawsuit, the litigants because it has been readied for trial (having at long last reached the final pretrial order stage) and this Court because it has expended major efforts in shaping the action.[3] But federal courts are courts of limited jurisdiction, and subject-matter-jurisdictional questions are non-waivable. Cónsent will not confer jurisdiction, and a losing party is not estopped from raising such a jurisdictional issue at any time, just as the court itself is not. See, e.g., *Ross v. Inter-Ocean Insurance Co.*, 693 F.2d 659 (7th Cir.1982), where the lack of subject-matter jurisdiction forced the parties to begin again in another forum even *after* a final judgment.

■ Two corollaries follow from the non-waivable nature of subject matter jurisdiction. For one thing, it would of course be possible for a court to sweep the question under the rug where neither party argues lack of jurisdiction. But nothing prevents a losing litigant, even after the case has been tried, from changing positions and arguing the jurisdictional flaw at that post-judgment stage.[4] Hence responsible jurisprudence compels this Court, if a jurisdictional defect really exists, to eschew the "easy" way out of ignoring the problem at the urging of the litigants. Second and relatedly, if the jurisdictional issue is uncertain but is at least a difficult one, with substantial arguments on both sides, prudence counsels dismissal. That is so because a dismissal followed by State Security's refiling the case in a court that clearly has jurisdiction is a no-risk situation, while retention of the case here poses

the ticking-time-bomb risk already discussed.

■ This opinion turns then to the facts relevant to the jurisdictional question. Two such facts have emerged from the parties' post-Opinion submissions:

1. Both State Security's reinsurers, General Reinsurance Corporation ("General") and North Star Reinsurance Corporation ("North Star"), are Delaware corporations, as is Frank B. Hall & Co., Inc. (State Security Mem. 1; Halls Mem. 2). Hence if either reinsurer must be a party plaintiff in this case, complete diversity does not exist and subject matter jurisdiction is lacking.[5]

2. Several of the losses for which State Security sues were actually paid in part by North Star (State Security Mem. 1), though it appears General was not involved in any of the losses in suit.

In light of those facts, this opinion need focus only on the posture of North Star.

To support the claimed lack of necessity for North Star's involvement in this case, State Security points to Article V of its reinsurance agreement with North Star. That provision spells out how North Star and State Security will share any "salvage" (net recoveries by State Security) and goes on to place the burden of enforcing salvage rights on State Security:

The Company [State Security] agrees to enforce its rights to salvage or subrogation relating to any loss, a part of which loss was sustained by the Reinsurer [North Star], and to prosecute all claims arising out of such rights.

State Security's reliance on Article V is oversimplistic. That provision, which both authorizes and obligates State Security "to prosecute" claims such as the one asserted in this action, does not purport to override

Halls made that an alternative suggestion in their motion in limine.

3. Two previously published opinions (530 F.Supp. 94 (N.D.Ill.1981) and 95 F.R.D. 496 (N.D.Ill.1982)), another one (the Opinion) published with this opinion, and a whole series of unpublished bench rulings are only part of the story.

4. At that point the loser would have nothing at risk—it could get a second bite at the apple by challenging subject matter jurisdiction. Indeed, counsel's responsibility to his, her or their client might well require interposing such a challenge.

5. Both State Security Mem. 2 and Halls Supp. Mem. 2 acknowledge that consequence.

the rules of law applicable to such prosecution—for example, it nowhere defines whether State Security can do so solely in its own name rather than doing so in the name of North Star to the extent of the latter's interest. Nothing in the reinsurance contract limits the subrogation rights of North Star as reinsurer—indeed the very effect of the contract is to *create* such subrogation rights. And it is Fed.R.Civ.P. ("Rule") 17(a)(in conjunction with state law defining whether a party has a legal interest) that determines the status of a subrogee (such as North Star) as a real party in interest.

In the latter respect, Halls Mem. 3 says euphemistically that under Article V of the State Security-North Star agreement (and the corresponding provision in General's agreement):

> To the extent the reinsurers paid a portion of the claims or expenses for which plaintiff seeks recovery, they could be deemed partial subrogees. Under any of these provisions, the reinsurers could be deemed real parties-in-interest in this case.

However, the case Halls candidly cite for that proposition, *Blatz v. City of Rock Falls,* 105 Ill.App.3d 732, 61 Ill.Dec. 452, 434 N.E.2d 807 (3d Dist.1982) does not at all speak in "could be" terms. Instead it establishes unequivocally that North Star *is* a real party in interest by reason of its payments.

In fact *Blatz, id.* at 733, 61 Ill.Dec. at 453, 434 N.E.2d at 808 stands for these propositions in a reinsurance situation where (as here) there has been no outright assignment of claims as between State Security and its reinsurer North Star:

1. By virtue of its payments, North Star became subrogated to State Security's rights as to the present claim, up to the amount of North Star's payments.

2. Such subrogation arose independent of the parties' contract, by operation of law.

3. To the extent that damages resulted beyond those paid for by North Star, *but only to that limited extent,* State Security retained an interest in the claim against Halls.

As *Blatz, id.* at 734, 61 Ill.Dec. 453, 434 N.E.2d at 808 (citations omitted, emphasis added) then goes on to say:

> In such situations, there are two claimants against an alleged tortfeasor, each asserting a claim based upon the same cause of action, .... The *subrogee* may bring an action, in its name or for its use, providing it sets forth in pleading the basis for the subrogation. (Ill.Rev.Stat. 1979, ch. 110, [¶ 2–403(c) ].) Similarly, the insured-subrogor, *to the extent he has not been compensated for damages by his insurer,* may bring an action to recover the damages sustained.

Where as here the claim asserted against Halls is for the entire range of losses, both those borne by State Security *and* those paid for by North Star, there is no question North Star is the "real party in interest" as to its share of the "salvage."

That leaves matters in this posture:

1. Rule 17(a) (emphasis added) literally requires this action to be brought by North Star as a real party in interest:

> Every action *shall* be prosecuted in the name of the real party in interest.

Though the Rule creates an exception where another party is authorized by statute to sue in its own name, in this instance Ill.Rev.Stat. ch. 110, ¶ 2–403(c) says the action "shall be brought either in the name or for the use of the subrogee" (North Star). It does *not* authorize the entire action to be brought in the name of the subrogor (State Security).

2. Rule 17(a) then goes on to call for dismissal of this action, absent joinder or substitution of North Star as the "real party in interest." And of course any joinder of North Star would destroy diversity and thus mandate dismissal of this action for lack of subject matter jurisdiction.

3. There is authority that might perhaps be viewed as looking in both directions as to whether joinder of North Star is required:

(a) *Wadsworth v. United States Postal Service*, 511 F.2d 64, 65 (7th Cir.1975) (quoted at somewhat greater length in the Opinion, 109 F.R.D. at 97) says the effect of Rule 17(a) is that "the insurer who has paid part of the loss is required to be joined as plaintiff." *United States v. Aetna Casualty & Surety Co.*, 338 U.S. 366, 380–81 [70 S.Ct. 207, 215, 94 L.Ed. 171] (1949) (quoted extensively in the Opinion, 109 F.R.D. at 97–98), on which *Wadsworth* relied for the proposition of required joinder of the insurer, had announced exactly that rule. And those cases, both dealing with federal-question litigation, find a reasoned counterpart in the diversity-of-citizenship context such as the present one, *Travelers Insurance Co. v. Riggs*, 671 F.2d 810, 814 (4th Cir.1982).

(b) State Security and Halls point to *Glacier General Assurance Co. v. G. Gordon Symons Co.*, 631 F.2d 131, 134 (9th Cir.1980), *Garcia v. Hall*, 624 F.2d 150, 152 (10th Cir.1980) and *Virginia Electric & Power Co. v. Westinghouse Electric Corp.*, 485 F.2d 78, 84–85 (4th Cir.1973) as purportedly tempering the potential impact of Rule 17(a) by making use of Rule 19, thus relieving against the necessity of joining the subrogee-reinsurer. But what counsel have failed to address is that *each* of those cases was decided in the context of state law that permitted suit for the full amount of the loss by and in the name of the partly-compensated insured. It was in that framework that *Glacier* said, 631 F.2d at 134:

We therefore hold that Glacier is a real party in interest as to, and may maintain an action to recover, the entire claim.[6]

And see the comparable statement in *Garcia*, 624 F.2d at 152 (where the subrogee insurance company had actually instituted the suit in the name of the insured for the entire loss in accordance with substantive state law)[7] and *Virginia Electric*, 485 F.2d at 83 ("In addition to having a sufficient interest in the litigation, VEPCO, as subrogor, is entitled under the substantive law to bring suit for its entire loss"). That situation, common to all three cases relied on by the litigants, differs sharply from Illinois law as explicated in *Blatz*.

In short, even the apparently inconsistent lines of authority are not what they seem on the surface. All the cases on which State Security and Halls place their reliance involved state law that would have permitted State Security to sue for the whole claim (including the subrogated portion), while Illinois law has exactly the opposite thrust.

One added point, though not bearing directly on the jurisdictional issue, is worth noting. Under Ill.Rev.Stat. ch. 110, ¶ 13–217 State Security would have at least a year to refile its lawsuit if this one is dismissed for lack of jurisdiction.

Each potential resolution of the current question has much to be said for it and much to be said against it. Dismissal, followed by State Security's filing anew, will of course necessarily create delay in getting the lawsuit to trial in the new court.[8] But though the parties have completed discovery and their final pretrial order in this Court, that does not lead to immediate trial here in any event. It rather establishes priority for trial, with this case standing behind other lawsuits that had reached the

---

6. And it was against that backdrop that *Glacier* devised the solution of imposing a constructive trust on the recovery of the entire claim by the insured.

7. As the Opinion, 109 F.R.D. at 98 pointed out, *Garcia, id.* at 152 & n. 5 also sought to distinguish *Aetna* on a basis that might or might not be applicable here.

8. It should be understood, however, that this problem is really of State Security's own making. Had this Court been properly apprised from the very beginning of the fact of reinsurance and the interest of the reinsurer, this opinion's analysis would have taken place early in the case rather than after completion of discovery.

final pretrial order stage earlier than the litigants here have done.[9] Given their full present readiness for trial, there is no reason the parties should be unsuccessful in urging an accelerated trial in another forum after refiling.

On the other side of the coin, there is no gainsaying that the courts (*Glacier, Garcia* and *Virginia Electric*) that have opted to lean more heavily on Rule 19 have done so despite a seemingly clear mandate from Rule 17(a) and despite the equally clear reading of that mandate in *Aetna.* It may perhaps be sensible policy to stretch the drafters' language that way to avoid dismissal, and that result may perhaps be supportable where state law calls for the insured to sue for the whole claim. But where state law (as in Illinois) does not permit the insured to do so, and where there is no controlling authority in this Circuit that calls for Rule 19 to override Rule 17(a), it cannot be worthwhile to risk a trial and an outcome that may be collaterally attacked.

Where either resolution of the current question may perhaps be in error, but only one resolution would be fatally so, the balance weighs against taking that risk. This action is dismissed for lack of subject matter jurisdiction (obviously without prejudice to its being refiled in a state court of competent jurisdiction).

---

9. This 1981 lawsuit is one of the oldest on this Court's calendar. Nearly every case that stands ahead of it in line for trial was filed later—indeed, various of them were 1984 and 1985 filings that are fully ready for trial. This Court's most recent civil trial was of a mid-1984-filed lawsuit.