NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-4322
_____

RYAN JACOBSON,
a minor and by Robert Jacobson and Beverly Jacobson
as the parents and natural guardians of Ryan Jacobson,
Appellant

v.

BMW OF NORTH AMERICA, LLC, a corporation;
BAYERISCHE MOTOREN WERKE AKTIENGESOLLSCHAFT,
a corporation

_____

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 02-cv-00181)
District Judge: Honorable Joy Flowers Conti

_____

Submitted Under Third Circuit LAR 34.1(a)
March 23, 2010

Before:  RENDELL, FUENTES and JORDAN, Circuit Judges.

(Filed:  April 15, 2010)
_____

OPINION OF THE COURT
_____

RENDELL, Circuit Judge.

Plaintiff Ryan Jacobson appeals from the District Court's denial of his motion for

a new trial following a jury verdict in favor of defendants Bayerische Motoren Werke Aktiengesellschaft ("BMW-AG") and BMW of North America, LLC ("BMW NA") (collectively, "BMW") in a products liability lawsuit arising out of an accident involving a 1987 BMW 325i, a two-door automatic transmission sport coupe, driven by Robert Jacobson, Ryan's father. On appeal, Jacobson argues that the District Court abused its discretion in denying Jacobson's motion for a new trial, which challenged the Court's prior evidentiary rulings and its jury instructions. Because we conclude that the District Court did not abuse its discretion, we will affirm the Order and Judgment of the District Court.

## I.    Background

The following facts come from the trial transcript, and, except where otherwise indicated, are undisputed. The vehicle was manufactured by BMW-AG and sold in the United States by BMW NA. BMW-AG is a German corporation, which, among other things, manufactures and distributes motor vehicles worldwide. BMW NA, a Delaware Limited Liability Company registered to do business in Pennsylvania, is a wholly owned subsidiary of BMW-AG, and distributes, sells, markets, and services motor vehicles in North America that were manufactured by BMW-AG.

On May 4, 1999, Robert Jacobson drove the BMW 325i to do errands with his two sons, Ryan and Christopher. Ryan, age 12, was seated in the front passenger seat, and Christopher, age 9, was seated in the rear passenger seat. Robert Jacobson stopped at

Sam's Bar, in Dormont, Pennsylvania, to buy a six-pack of beer for a family cookout, and parked the car in the bar's parking lot. He claims that, when he parked the car, he placed the shift lever into the "Park" position, turned the engine off, set the parking brake, and removed the keys from the ignition, before exiting the vehicle and entering the bar.[1] Ryan and Christopher remained in the car while their father entered the bar.

The parking lot of the bar is on a slope. While his father was inside the store, Ryan began playing with the gear shift lever, which was located between the front seats. While playing, Ryan disengaged the gear shift lever from the "Park" position, shifting it into either "Reverse" or "Neutral," and the car began to drift backwards down the slope. Ryan tried to move the gear shift back into the "Park" position, but was unable to do so.

Ryan and Christopher became scared, and Christopher climbed into the front seat and exited through the driver's side window unhurt. Ryan exited through the passenger side window, but fell to the ground and was struck by the right front part of the car. He sustained multiple fractures, contusions, and lacerations, as well as injuries to his brain and left eye. His injuries required several surgeries, including arthroscopic surgery on his left knee, repairs to his left eye, brain surgery, and plastic surgery. He has also needed extensive physical therapy, and further surgeries are likely to be necessary. As a result of

---

[1] BMW disputed Robert Jacobson's claims that he engaged the parking brake and that he removed the keys from the ignition when exiting the car. It also adduced evidence from Christopher that Ryan disengaged a safety mechanism and thereby overrode the car's safety features. However, this factual dispute is not relevant to the issues on appeal.

these injuries, his face and skull have been permanently disfigured.

Robert Jacobson filed suit on behalf of his minor son Ryan against BMW in the Western District of Pennsylvania, alleging that BMW was strictly liable for Ryan's injuries because the design of the car was defective. He asserted that BMW should have equipped the vehicle with either a Brake Shift Interlock ("BSI"), a device which would have prevented the car from shifting out of "Park" unless the brake pedal was depressed, or a Park Lock System ("PLS"), a device which would have prevented the gear shift from moving out of "Park" unless the key was in the ignition and had been turned out of the "Lock" position (collectively "Lock Systems"). BMW contended that the accident could not have happened in the way Jacobson urged, and that the car was safe as designed.

The case went to trial, and a jury returned a verdict in favor of BMW. Jacobson filed a timely motion for a new trial, which was denied by the District Court. Jacobson then filed this appeal, contending that the District Court erred in denying his motion for a new trial. In particular, Jacobson argues that four errors warranted a new trial. First, he claims that the District Court erred in granting a motion in limine by BMW to exclude evidence of other vehicles that used the Lock Systems, and of product recalls by Nissan and Jeep to retrofit their cars with Lock Systems. Second, he argues that the District Court erroneously barred him from presenting evidence of the "feasibility" of the design changes. Third, Jacobson claims that the District Court gave an erroneous jury instruction on the definition of "design defect." Finally, he argues that the District Court erred in

4

admitting evidence of Jacobson's contributory negligence.

## II.    Jurisdiction and Standard of Review

The District Court had jurisdiction over this case pursuant to 28 U.S.C. § 1332, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

We review a district court's ruling on a motion for a new trial for abuse of discretion, recognizing that the decision to grant or deny a new trial is normally within the discretion of the district court. *Blancha v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992); *McKenna v. City of Philadelphia*, 582 F.3d 447, 460 (3d Cir. 2009). A court's latitude in ruling on the motion is especially broad when the grounds asserted in the motion concern matters that initially rested within the discretion of the district court. *Klein v. Hollings*, 992 F.2d 1285, 1289-90 (3d Cir. 1993). Rulings on evidentiary matters and the content of instructions to the jury are two such discretionary matters. *See McKenna*, 582 F.3d at 460 (evidentiary rulings); *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 78 (3d Cir. 2009) (jury instructions).

## III.    Discussion

### A.    Evidence of Feasibility

Prior to trial, BMW filed a motion in limine seeking to exclude evidence of other car manufacturer recalls (by Nissan in 1987 and Jeep in 1994) in order to retrofit their vehicles with Lock Systems. While Jacobson had adduced this evidence to show that it would have been feasible for BMW to have included a Lock System in its vehicles at the

time the 325i was manufactured, BMW asserted that it would not contest feasibility at trial. The parties agreed to a stipulation that the Lock Systems were "technologically and economically feasible" at the relevant time, and the District Court therefore excluded the evidence of other recalls.

Jacobson argues that this was an abuse of discretion. To demonstrate that the Court abused its discretion, Jacobson must show that the evidentiary ruling was "arbitrary, fanciful or clearly unreasonable." *Acumed LLC v. Advanced Surgical Servs., Inc.,* 561 F.3d 199, 211 (3d Cir. 2009) (internal quotation marks and citations omitted). Jacobson cannot do so. Notwithstanding the fact that this evidence may have been admissible under Federal Rule of Evidence 407, which allows for evidence of subsequent remedial measures to be admitted in certain instances, it was not necessary to admit this evidence here, since BMW had stipulated to feasibility. It was also not unreasonable to exclude it. Although Jacobson now argues that this evidence would also have shown that the BMW was unsafe without a Lock System, he did not advance this argument in the District Court, and we will not consider it for the first time on appeal.

Jacobson also challenges the exclusion of this recall evidence based on certain responses of BMW's expert witness, Wolfe Busch, in which he stated that the Lock Systems were "feasible, but not yet invented." Jacobson argues that this "opened the door" to the recall evidence to demonstrate the feasibility and availability of the Lock Systems. However, the District Court and the parties addressed this objection by adding

6

to the previous stipulation language stating that these systems were "available." The District Court then properly instructed the jury to disregard Busch's prior testimony to the extent it contradicted the stipulation, Busch agreed with the amended stipulation, and Jacobson did not lodge an objection to this procedure. We find no abuse of discretion in the District Court's handling of this aspect of the trial.

B.    *Jury Instruction Concerning the Definition of "Design Defect"*

Jacobson also finds fault with the District Court's instruction regarding the definition of a "design defect." As part of this instruction, the Court stated that "[t]he designer or distributor of a product is a guarantor of its safety. The product must be provided with every element necessary to make it safe for its *intended use* by an intended user and without any condition that makes it unsafe for its intended use by an intended user."  App. 243-44 (emphasis added). Jacobson contends that the District Court erred by inserting the word "intended" before the word "use" and by not further instructing the jury concerning the meaning of "intended."

However, Jacobson did not object to the phrasing of this language at trial.[2] Instead, he specifically accepted several proposed jury instructions that incorporated the

---

[2] The contentious issue between the parties at trial with regard to this instruction was the phrase "intended user," rather than "intended use." *See* App. 189-94. During the final charge conference, after the Court had gone over the instruction containing "intended use," App. 191, Jacobson's lawyer stated that, "on behalf of Plaintiff, I have reviewed your entire document and I have no objections to anything other than the 'and/or,' and the language in the verdict slip," App. 201.

7

concept of an "intended use."[3]  A party who has not clearly and specifically objected to a jury instruction is deemed to have waived that challenge.  *Alexander v. Riga*, 208 F.3d 419, 426 (3d Cir. 2000).  If a party does not object, we review the instruction for plain error, and will reverse "only if the trial court committed error that was fundamental and highly prejudicial."  *Id*.

There was no plain error.  Under Pennsylvania law, which the parties agree applies here, "a manufacturer can be deemed liable only for harm that occurs in connection with a product's intended use by an intended user."  *Pa. Dep't of Gen. Servs. v. U.S. Mineral Prods. Co.*, 898 A.2d 590, 600 (Pa. 2006).[4]  Thus, it was appropriate for the Court to refer

---

[3] Jacobson agreed to Defendants' Requested Jury Charge No. 15, which stated: "To decide if the Model 325 in question was defective, you must first decide if the Model 325 was defective in its *normal and intended use*."  Supp. App. 169 (emphasis in original).  He further agreed to Defendants' Requested Jury Charge No. 17, which stated: "A manufacturer is entitled to assume that its products will not be subjected to abnormal, unintended uses.  No liability follows from damages resulting from such abnormal, unintended uses."  Supp. App. 171.  Finally, Jacobson's own proposed instruction, Plaintiff's Requested Jury Charge No. 1, directly incorporated the concept of an "intended use" into the definition of "design defect" by stating:

> The product must be provided with every element necessary to make it safe for its intended and foreseeable use, and without any condition that makes it unsafe for its intended and foreseeable use.  If you find that the product, at the time it left the defendant's control, lacked any element necessary to make it safe for its intended and foreseeable use, or contained any condition that made it unsafe for its intended and foreseeable use, and there was an alternative, safer practicable design, then the product was defective and the defendant is liable for all harm caused by the defect.

Supp. App. 202.

[4] Although the Pennsylvania Supreme Court's decision in *Department of General Services* was issued after Jacobson was injured and after he filed this lawsuit, federal courts must apply state law "in accordance with the then controlling decision of the highest state court."  *Vandenbark v. Owens-Illinois Glass Co.*, 311 U.S. 538, 543 (1941).

8

to the product's "intended use" in the jury instructions. The principal case relied upon by Jacobson, *Mount Olivet Tabernacle Church v. Edwin L. Wiegand Division*, 781 A.2d 1263 (Pa. Super. Ct. 2001), is not applicable to these facts. In that case, the court merely held that the word "intended" is "not always necessary for a proper instruction." *Id.* at 1268. It did not preclude courts from ever referring to the intended use.

Jacobson did object to the Court's decision not to include a definition of "intended use" that encompassed any use "reasonably foreseeable" to the seller. When a party has properly objected to a jury instruction, we review for abuse of discretion, and we must determine "whether, taken as a whole, the instruction properly apprised the jury of the issues and the applicable law." *Donlin*, 581 F.3d at 78 (citing *Dressler v. Busch Entm't Corp.*, 143 F.3d 778, 780 (3d Cir. 1998)). Even a mistake in a jury instruction will not constitute reversible error if the instruction "'fairly and adequately' presents the issues in the case without confusing or misleading the jury." *United States v. Ellis*, 156 F.3d 493, 498 n.7 (3d Cir. 1998). Jacobson cites to *Pacheco v. The Coats Co.,* 26 F.3d 418, 422 (3d Cir. 1994), and *Sheldon v. West Bend Equipment Corp.*, 718 F.2d 603, 608 (3d Cir. 1983), as establishing that under Pennsylvania law the "intended use" of a product includes all uses "reasonably foreseeable" by the manufacturer. However, the reasoning of these

---

This requires the application of current state law, as determined by the state supreme court, even if it were to be changed while the federal action is pending. *Id.*; *Air Prods. & Chems., Inc. v. Hartford Accident & Indem. Co.*, 25 F.3d 177, 181 (3d Cir. 1994); *Baker v. Outboard Marine Corp.*, 595 F.2d 176, 182 (3d Cir. 1979).

cases was explicitly rejected by the Pennsylvania Supreme Court. *Pa. Dep't of Gen. Servs.*, 898 A.2d at 603-04. We ordinarily are bound by the published decisions of prior panels of this court unless the holding is undermined by a subsequent Supreme Court case or overruled by this court sitting en banc. *Nationwide Ins. Co. v. Patterson*, 953 F.2d 44, 46 (3d Cir. 1991). However, when applying state law, we are free to reexamine the validity of our prior state law interpretations in light of subsequent decisions of the state supreme court. *Id.* Here, the Pennsylvania Supreme Court decision in *Department of General Services* was issued after our opinions in *Pacheco* and *Sheldon*, and specifically rejects their rationale. 898 A.2d at 603-04.

As noted above, the Pennsylvania Supreme Court in *Department of General Services* stated that "a manufacturer can be deemed liable only for harm that occurs in connection with a product's intended use by an intended user." *Id*. at 600. The court in that case rejected the trial court's jury instruction authorizing consideration of "foreseeability," holding that, with limited exceptions, the "foreseeable misuse of a product will not support a strict liability claim." *Id*. at 601. Therefore, the District Court's decision to omit "foreseeability" from its jury instruction on the definition of "design defect" properly apprised the jury of the applicable law, and the District Court did not abuse its discretion in denying Jacobson's motion for a new trial on this ground.

C.     *Admission of Evidence of Plaintiff's Contributory Negligence*

While Jacobson's brief mentions contributory negligence in the statement of facts,

10

it does not refer to it again. BMW correctly notes that "an argument consisting of no more than a conclusory assertion . . . will be deemed waived." *Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997). As we have previously stated, "appellate courts generally should not address legal issues that the parties have not developed through proper briefing." *S.W. Pa. Growth Alliance v. Browner*, 121 F.3d 106, 122 (3d Cir. 1997). Jacobson has therefore waived this argument and we need not consider its merits.

## IV.    Conclusion

For the reasons set forth above, we will AFFIRM the Order and Judgment of the District Court.