Tommy JOHNSON, et al., Plaintiffs,

v.

MURPH METALS, INC., et al., Defendants.

Freddie L. TOWNSEND, et al., Plaintiffs,

v.

RSR CORPORATION, et al., Defendants.

Archa Lee FREEMAN, Plaintiff,

v.

MURPH METALS, INC., et al., Defendants.

Civ. A. Nos. 3–79–0051–H, 3–79–0233–H and 3–80–0551–H.

United States District Court, N.D. Texas, Dallas Division.

April 8, 1983.

W. Richard Davis, Strasburger & Price, C.L. Mike Schmidt, Stradley Schmidt Stephens & Wright, T. Michael Wilson, Jackson Walker Winstead Cantwell & Miller, Walter H. Magee, Carter Jones Magee Rudberg Moss & Mayes, Lancaster Smith, B. Thomas McElroy, G. David Westfall, Dallas, Tex., for defendants.

Timothy E. Kelley, Dallas, Tex., for plaintiffs.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

These cases are before the Court on Defendants' Motion for Summary Judgment and Brief in Support, filed December 30, 1982; the parties' Stipulation of Facts, filed December 23, 1982; Plaintiffs' Brief in Response, filed January 31, 1983; Defendants' Letter Brief, filed February 4, 1983; Intervenor's Brief in Response to Defendants' Motion, filed February 23, 1983; Defendants' letter brief, filed March 7, 1983; and Intervenor's letter brief, filed March 23, 1983. (The cases are consolidated for summary judgment purposes.) The Court is of the opinion that Defendants' Motion should be, and it is hereby, GRANTED.

### A. Facts

Plaintiffs, who are employees of various lead smelting companies, allege that they have been injured by exposure to certain fumes and particulants emitted during the lead smelting process. Originally, the lead smelting companies were named as defendants, but they have been voluntarily dismissed by Plaintiffs. The remaining Defendants are all automotive battery manufacturers.

In manufacturing their batteries, Defendants use lead to form one of the battery components. The lead in the batteries is normally an inert material, and Plaintiffs' injuries did not result from working with the intact batteries. Stipulation ("Stip.") Nos. 12, 18. The lead in the batteries, however, is a fairly rare metal. Therefore, the batteries are often resold for recycling purposes after their useful life has expired. See Stip. Nos. 6, 10.

To recycle the lead the batteries must first be destroyed. Stip. No. 14. The destruction of the batteries is sometimes performed by lead smelting companies, and sometimes by independent operators. Stip. No. 17. The destruction of the battery does not create any significant amount of lead dust or fumes. Stip. No. 15. The type of lead fumes and dust that allegedly injured Plaintiffs occurs only after the lead is extracted from the destroyed battery and introduced into the smelting process. Stips. Nos. 3, 4, 12, 13.

Plaintiffs assert that Defendant battery manufacturers are liable to them for their injuries. They assert claims under three theories: (1) strict liability; (2) negligent failure to warn; and (3) breach of warranty. Defendants seek summary judgment as to all three theories of liability.

### B. Strict Liability and Negligent Failure to Warn

■ A federal court sitting in diversity jurisdiction must apply the law of the forum state. *Day & Zimmerman, Inc. v. Challoner,* 423 U.S. 3, 4, 96 S.Ct. 167, 168, 46 L.Ed.2d 3 (1975) (per curiam). Under Texas law, the theory of strict liability is applied as stated in Section 402A of the Restatement (Second) of Torts. *Cole v. Elliot Equipment Co.,* 653 F.2d 1031, 1034 (5th Cir.1981); *Lubbock Manufacturing Co. v. Sames,* 598 S.W.2d 234, 236 (Tex.1980); *Armstrong Rubber Co. v. Urquidez,* 570 S.W.2d 374, 375 (Tex.1978). Section 402A states as follows:

> *Section 402A Special Liability of Seller of Product For Physical Harm to User or Consumer.*
>
> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused *to the ultimate user or consumer,* or to his property, if
>
> (a) the seller is engaged in the business of selling such a product, and
>
> (b) is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection 1 applies although
>
> (a) the seller has exercised all possible care in the preparation and sale of his product, and
>
> (b) the user or consumer has not bought the product from or entered into any contractual relationship with the seller. Restatement (Second) of Torts § 402A (1965).

(Emphasis added.)

[3] Under Texas law, the theory of negligent failure to warn is applied as stated in Section 388 of The Restatement (Second) of Torts. *Olivarez v. Broadway Hardware, Inc.,* 564 S.W.2d 195, 201 (Tex.Civ.App.—Corpus Christi 1978, writ ref. n.r.e.); *Eddleman v. Scalco,* 484 S.W.2d 122, 126 (Tex.Civ. App.—Beaumont 1972, writ ref. n.r.e.). Section 388 states as follows:

> *Chattel Known to be Dangerous for Intended Use.* One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use,

for physical harm *caused by the use of the chattel in the manner for which and by a person for whose use it is supplied,* if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

(Emphasis added.)

Although Sections 402A and 388 obviously state different causes of action, they do have a common element: liability under them extends only to "users" of the product in question. In Section 402A, the requirement is phrased in terms of "the ultimate user or consumer". In Section 388, it is phrased in terms of the "person for whose use it is supplied". Both 402A and 388, then, require that a plaintiff be a "user" of the defendant's product.

■ To determine whether a plaintiff is a "user" of a product, the court must first define the product at issue. *Bell Helicopter Co. v. Bradshaw,* 594 S.W.2d 519, 529 (Tex. Civ.App.—Corpus Christi 1979, writ ref. n.r. e.). If, as in this case, the underlying material facts are undisputed, the definition of the product in question is properly a matter of law for determination by the Court. *See Bell Helicopter, supra.* In this case, Defendants manufacture batteries intended to be used in running automobiles. Stip. Nos. 5, 8. Lead, along with other materials, is used in manufacturing the batteries. Nevertheless, the Court finds that the actual products or chattels supplied by Defendants are the automotive batteries, not the element lead.

■ The Court must next determine whether, in the context of this case, Plaintiffs are "users" of Defendants' products. Concededly, the "user" requirement in Sections 402A and 388 has been broadly con-strued. For instance, in *Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076 (5th Cir.1973) *cert. denied,* 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974), the Fifth Circuit found that workers who made goods out of asbestos were "users" of the product asbestos. Similarly, in *Otis Elevator Co. v. Wood,* 436 S.W.2d 324 (Tex.1968), the Texas Supreme Court held that a person who leans across a moving escalator to save a falling child is a "user" of the escalator. Thus, even an accidental contact with the product, after it has passed through many hands, can constitute "use" of the product.

■ Nevertheless, there are necessarily some limits on the concept of product use. In each of the cases known to the court involving "use" of a product, the plaintiff had some contact, however brief, with defendant's product. In this case, Defendants' product was necessarily destroyed prior to the alleged injuries. Stip. No. 14. Plaintiffs have stipulated that Defendants' product did not injure them while it was intact or while it was being destroyed. Stip. Nos. 15, 18. Rather, the alleged damage occurred after a portion of the destroyed battery was transformed, through the smelting process, into an allegedly injurious substance. During the time periods in question, Plaintiffs did not even come in contact with Defendants' product; Defendants' product had ceased to exist.

To hold that Plaintiffs are "users" of Defendants' product would expand the concept of products liability far beyond its existing boundaries. It is justifiable to find that a woman leaning across an escalator is a "user" of the escalator. *See Otis Elevator, supra.* If, however, the escalator is discarded, and its scrap metal is made into a gun or a knife, it is untenable to find that a person wielding the knife or the gun is a "user" of that escalator. Similarly, it would be untenable to find that the creation of dangerous gases due to the smelting of scrap metal is a "use" of Defendants' automotive batteries. The Court finds that there are no material fact questions as to the "use" issue, and that, as a matter of law, Plaintiffs are not "users" of Defend-

ants' products within the meaning of Sections 402A and 388 of The Restatement (Second) of Torts. Defendants' Motion for Summary Judgment, therefore, is GRANTED as to the strict liability and failure to warn issues.

### C. Breach of Implied Warranty

█ Defendants also seek summary judgment as to Plaintiffs' claims for breach of implied warranty of merchantability. Under Texas law, it is well established that an implied warranty of merchantability does not attach when the purchaser knows that the goods are used. *Thornton Homes, Inc. v. Greiner,* 619 S.W.2d 8 (Tex.Civ.App. —Eastland 1981, no writ); *Valley Datsun v. Martinez,* 578 S.W.2d 485 (Tex.Civ.App.— Corpus Christi 1979, no writ); *Chaq Oil Co. v. Gardner Machinery Corp.,* 500 S.W.2d 877 (Tex.Civ.App.—Houston [14th Dist.] 1973, no writ). In this case, Defendants' batteries are clearly used. Their useful life has expired and they have value only as scrap. Stips. Nos. 6, 9. Therefore, no implied warranty of merchantability attaches to Defendants' products. Defendants' Motion for Summary Judgment must be GRANTED as to Plaintiffs' claim for implied warranty of merchantability.

### Conclusion

Plaintiffs in this case are neither "users" of Defendants' products nor persons for whose use the products are supplied. Thus, Defendants are not liable to Plaintiffs under theories of strict liability or negligent failure to warn. Defendants' products are clearly used goods at the time that they reach Plaintiffs. Therefore, no implied warranty of merchantability attaches to the products.

Defendants' Motion for Summary Judgment is GRANTED in all respects.

SO ORDERED.