**Ben KALIK and Frances Kalik, individually and Ben Kalik, t/d/b/a Swissvale Auto Surplus Parts Company, Plaintiffs,**

v.

**ALLIS–CHALMERS CORPORATION, Bethlehem Steel Corporation, Max Berman, Simon Brothers Company, Inc., Dravo Corporation, Duquesne Light, Keystone Resources, LTV Steel Company, Luria Brothers & Company, Inc., Robert Strellec, Union Railroad Company, United States Steel Corporation, Wagner Electric Company, Weirton Steel, Consolidated Coal Company, National Steel Corporation, Westinghouse Electric Corporation, General Electric Company, Sanford Steel Products, and Noralco Corporation, Defendants,**

v.

**Edward P. GREEN, the Kaiser-Nelson Steel & Salvage Corp., Marino Brothers, Inc., P.J. Greco & Sons, Inc., and Follansbee Steel Corporation, Defendants.**

Civ. A. No. 86–966.

*United States District Court, W.D. Pennsylvania.*

April 15, 1987.

C. Richter Taylor, Jr., Buchanan Ingersoll, Pittsburgh, Pa., for Luria Bros.

Francis J. Carey, Balzarini, Carey & Maurizi, Pittsburgh, Pa., for Strellec.

John Lee, Pittsburgh, Pa., for Duquesne Light.

Ronald S. Cusano, Corcoran, Hardesty, Ewart, Whyte & Polito, Daniel Rogers, Pittsburgh, Pa., for Consolidated Coal.

Michael L. Magulick, Wayman, Irvin & McAuley, Pittsburgh, Pa., for Noralco.

David J. Armstrong, Frederick W. Bode, III, Pittsburgh, Pa., for Westinghouse Elec.

J.W. Montgomery, III, George E. Yokitis, Alder, Cohen & Grigsby, Pittsburgh, Pa., for Wagner Elec.

Charles Weiss, Peter G. Veeder, Thorp, Reed & Armstrong, Pittsburgh, Pa., for Weirton Steel and Nat. Steel.

Avrum Levicoff, Egler, Anstandig, Garrett & Riley, Pittsburgh, Pa., for Kaiser-Nelson Steel & Salvage Corp.

John S. Sherry, Pittsburgh, Pa., for Marino Bros., Inc.

Carl R. Schiffman, David L. Schwartz, Voelker, Schiffman, Parise & Wojdowski, Pittsburgh, Pa., for plaintiffs.

Kenneth Argentieri, Kirkpatrick & Lockhart, Pittsburgh, Pa., for Allis-Chalmers Corp.

Blair McMillan, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Bethlehem Steel, Duquesne Light, LTV Steel, Union Railroad, U.S. Steel, Wagner Elec., Westinghouse Elec. and General Elec.

Harry F. Klodowski, Jr., Berkman, Ruslander, Pohl, Lieber & Engle, Pittsburgh, Pa., for Charles Berman, Sanford Steel and Keystone Resources.

J. Philip Bromberg, Pittsburgh, Pa., for Max Berman.

Michael D. McDowell, Dravo Corp., Legal Dept., Pittsburgh, Pa., for Dravo.

## MEMORANDUM OPINION

TEITELBAUM, District Judge.

This is an action by the owners of a site contaminated by hazardous substances against the manufacturers and suppliers of the products containing the hazardous substances to recover clean-up costs and damages under the Comprehensive Environmental Response Compensation and Liability Act of 1980 (CERCLA) and under state law.

The action was brought by the Kaliks (¶ 1.1, 1.2),[1] the owners of a site (¶ 1.3) from which plaintiff Ben Kalik operated the Swissvale Auto Surplus Parts Company (SASPC) (¶ 1.3–1.4), a scrap metal business. There are 27 defendants: 3 manufacturers of electrical components containing PCB's, a hazardous substance (¶ 2.1, 2.11, 2.16), 23

1. All citations are to the amended complaint. Likewise, all references to the "complaint" are to the amended complaint.

suppliers of junk electrical components containing PCB's (¶ 2.2–2.10, 2.12–2.14, 2.17–2.-27), and 1 defendant which is both a manufacturer of electrical components containing PCB's and a supplier of junk electrical components containing PCB's (¶ 2.15).

The complaint makes the following allegations. Between 1970 and 1984 SASPC purchased junk electrical components for use as scrap (¶ 6, 8). The junk electrical components contained PCB's, a hazardous substance (¶ 9). During the course of storage, handling and dismantling of the junk electrical components, PCB contaminated oil spilled or leaked onto the site (¶ 10). The combustion of PCB's under certain circumstances may produce dioxins, a highly toxic substance (¶ 11). As a furnace was used in dismantling and processing the junk electrical components, dioxins polluted the site (¶ 12). The United States Environmental Protection Agency (EPA) has spent $1.9 million to clean up the site (¶ 15–16); the plaintiffs have spent $22,000 to remove PCB contaminated oil from the site (¶ 17).

Plaintiffs seek recovery of clean-up costs, damages for injuries to the site and to the business, and a declaration of rights. Federal jurisdiction over the manufacturer defendants is based on diversity of citizenship. Federal jurisdiction over the supplier defendants is based on CERCLA, 42 U.S.C. §§ 9601–57.

Before the Court are motions to dismiss by General Electric Company (GE), Allis-Chalmers Corporation, Robert Strellac, Max Berman, and Edward P. Green.

### 1. *General Electric*

The complaint identifies GE as a manufacturer of electrical components containing PCB's. GE is named as a defendant in two counts: Count 1 sets forth a products liability claim under § 402A of the Restatement (2d) of Torts, Count 5 sets forth a claim for a negligent failure to warn.[2]

### a. *failure to state a claim—reasonably foreseeable use*

GE moves to dismiss for failure to state a claim. GE's position derives from the

fact that it manufactured *new* electrical components, but that SASPC dealt in *junk* electrical components. Based on these facts, GE makes a three part argument.

First, GE argues that the plaintiffs are not within the class of *persons protected* under § 402A or the duty to warn. Specifically, GE contends that the allegations of the complaint that SASPC dealt in junk electrical components establishes as a matter of law that the plaintiffs are not "users" of the new electrical components manufactured by GE entitled to the protection of § 402A or to warnings.

Second, GE argues that it is not a *person subject to liability* under § 402A. Specifically, GE contends that there are no allegations that it sold junk electrical components which would be necessary to impose liability under § 402A.

Third, GE argues that its *product* has been substantially changed precluding liability under § 402A. Specifically, GE contends that there are no allegations that the new electrical components it manufactured were not substantially changed and, in fact, the allegations that SASPC dealt in junk electrical components suggest that GE's product was substantially changed, thereby precluding liability under § 402A.

Although GE has framed its argument in three parts focusing on the persons protected, the persons subject to liability, and the product, these three parts can all be subsumed within the broader inquiry of whether plaintiff's use of defendant's product was reasonably foreseeable by defendant manufacturer. It is to this question that the Court now turns.

▬ Liability exists under § 402A or for a negligent failure to warn only if there was a use of the product reasonably foreseeable to the manufacturer. Under § 402A a product is defective if it lacks any element necessary to make it safe for its intended use or contains any condition that makes it unsafe for its intended use. *Ber-*

---

**2.** To the extent the complaint implies GE is a defendant in the other counts, GE's motion to dismiss will be granted.

*kebile v. Brantly Helicopter Corp.*, 462 Pa. 83, 337 A.2d 893 (1975); *Azzarello v. Black Bros. Co., Inc.*, 480 Pa. 547, 391 A.2d 1020 (1978). A negligent failure to warn subjects a supplier of a product to liability for "physical harm caused by the use of the chattel in the manner for which ... it is supplied." Restatement (2d) of Torts, § 388. The intended use of a product includes any use reasonably foreseeable to the manufacturer. *Sheldon v. West Bend Equipment Corp.*, 718 F.2d 603, 608 (3d Cir.1983). In general, whether the plaintiff's use of a product was reasonably foreseeable to the manufacturer raises a question of fact for the jury. *See e.g., Sheldon v. West Bend Equipment Corp.*, 718 F.2d at 608.

Nevertheless, it has been held, as a matter of law, that the recycling of a product, after it has been destroyed, is not a use of the product reasonably foreseeable to the manufacturer. *Johnson v. Murph Metals, Inc.*, 562 F.Supp. 246 (N.D.Tx.1983). In *Johnson* the defendant manufactured automotive batteries. After the useful life of the batteries, the batteries were often resold in order to recycle the lead in the batteries. In the recycling process, the batteries were first destroyed, then the lead was extracted, and then the lead was introduced into a lead smelting process. The plaintiffs, employees of lead smelting companies, alleged that during the lead smelting process, they were exposed to harmful lead fumes and lead dust. It was stipulated that the employees did not sustain any harm while the batteries were intact or while the batteries were being destroyed. The employees asserted the battery manufacturer was liable under § 402A and for a negligent failure to warn. The Court held, as a matter of law, that it was "untenable to find that the creation of dangerous gases due to the smelting of scrap metal is a 'use' of defendant's automotive batteries." 562 F.Supp. at 249.

It has also been held, as a matter of law, that the destruction of a product is not a use of the product reasonably foreseeable to the manufacturer. *Wingett v. Teledyne Industries, Inc.*, 479 N.E.2d 51 (Ind.1985). In *Wingett* the defendant manufactured ductwork used to collect sand and dust from machinery. The plaintiff, a member of a demolition crew, alleged that during the removal of the ductwork, he sustained injury when the connection between two segments of ductwork gave way. The plaintiff asserted the ductwork manufacturer was liable under § 402A. The Court held, as a matter of law, that the dismantling or demolishing of the ductwork was not a reasonably foreseeable use.

While the question of foreseeability is generally one of fact for the jury, we hold that appellant's "use" of the ductwork was not reasonably foreseeable as a matter of law, notwithstanding appellant's allegation that he was employing the standard trade procedure for duct removal. Because the dismantling and demolition of the ductwork was not a reasonably foreseeable use of the product [the manufacturer] ... owed no duty to [appellant] to warn of any risks related to his work as part of the demolition crew. 479 N.E.2d at 56.

The parties have not cited, and the Court's research has not disclosed, any cases reaching contrary results on similar facts. Thus, although the Pennsylvania courts have not yet addressed this issue, there is no reason to believe that they would reach a contrary result.

■■■ In the present case the plaintiffs allege injuries sustained during the course of storage and handling of junk electrical components, and also injuries sustained during the course of dismantling and processing junk electrical components. The decisions discussed above provide no basis for concluding, as a matter of law, that the storage and handling of junk electrical components was not a reasonably foreseeable use of GE's product. On the other hand, these decisions do provide a persuasive basis for concluding, as a matter of law, that the dismantling and processing of junk electrical components was not a reasonably foreseeable use of GE's product, and the Court so finds. Accordingly, the allegations of injury as a result of the

dismantling and processing of junk electrical components will be dismissed.

### b. *failure to state a claim—statute of limitations*

GE moves to dismiss contending the claims against it are time-barred. Specifically, GE makes the following argument: There had been EPA proceedings against the plaintiffs under the Toxic Substances Control Act charging improper storage and handling of PCB's. As a result of these proceedings, plaintiffs knew, at least by March, 1981, that the electric components on their site contained hazardous PCB's. However, the present action was not commenced until May 9, 1986. Therefore plaintiffs' claims against GE are barred by Pennsylvania's two year statute of limitations for tort claims.

In this action plaintiffs seek recovery of clean-up costs, as well as damages for injury to the site and to the business. According to the complaint, the contamination of the site was discovered after May, 1984 and clean-up costs were expended after that time. (Ex. A and B). The business ceased its operations in 1984 (¶ 19). Thus, the injuries for which plaintiffs seek recompense did not occur until after May, 1984 and the complaint was timely filed within two years of the injury.

Of course, finding that the complaint was timely filed does not mean that the earlier EPA enforcement action is not relevant. Because of EPA's enforcement action, the plaintiffs may well have known, or should have known, at least by March, 1981, that the electrical components on the site contained PCB's. This knowledge may well be relevant to whether the absence of any warning, as asserted by plaintiffs, in fact caused injury to the plaintiffs.

### c. *lack of subject matter jurisdiction*

GE moves to dismiss for lack of subject matter jurisdiction.

There are 23 defendants: 3 manufacturers, 23 suppliers, and 1 manufacturer-supplier. Federal jurisdiction over the manufacturer defendants is based on diversity of citizenship. Plaintiffs are citizens of Pennsylvania (¶ 1.1, 1.2); GE, one of the manufacturer defendants, is a citizen of Connecticut (¶ 2.16); Allis Chalmers Corp., another manufacturer defendant, is a citizen of Wisconsin (¶ 2.11); and Wagner Electric Company, the third manufacturer defendant, is a citizen of New Jersey (¶ 2.11). There is complete diversity between plaintiffs and the manufacturer defendants.

 Federal jurisdiction over the supplier defendants is based on CERCLA, 42 U.S.C. § 9601 *et seq.* Citing *United States v. Westinghouse Electric Co.*, 22 E.P.C. 1230 (S.D.Ind.1983) and *Broderick Investment Co. v. Monsanto Co.*, No. 86 CV 334 (D.Col.1986), GE argues the supplier defendants were bona fide sellers of junk electrial components insulated from liability under CERCLA, and therefore the non-diverse citizenship of some of the supplier defendants must be considered in determining whether there is complete diversity over the manufacturer defendants. Contrary to GE's reading of *Westinghouse Electric* and *Broderick Investment Co.*, both cases recognize that generators of hazardous waste, such as plaintiffs allege the supplier defendants to be, may be liable under CERCLA. Thus, there is CERCLA jurisdiction over the supplier defendants. Because there is an independent basis for federal jurisdiction over the supplier defendants, the fact that some of the supplier defendants are not diverse to the plaintiffs, does not destroy the otherwise complete diversity jurisdiction over the manufacturer defendants. *See Romero v. International Terminal Operating Co.*, 358 U.S. 354, 381, 79 S.Ct. 468, 485, 3 L.Ed.2d 368, *reh. denied*, 359 U.S. 962, 79 S.Ct. 795, 3 L.Ed.2d 769 (1959).

 The lone manufacturer-supplier defendant, Westinghouse Electric Company, is a citizen of Pennsylvania (¶ 2.15). To the extent that claims are asserted against it as a supplier defendant, there is jurisdiction under CERCLA. Because there is an independent basis for federal jurisdiction over Westinghouse Electric, to the extent that claims are asserted against it as a manufacturer defendant there is pendent jurisdiction. *See United Mine Workers v.*

*Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

### 2. *Allis-Chalmers*

The complaint identifies Allis-Chalmers as a manufacturer of electrical components containing PCB's. Allis-Chalmers is named as a defendant in two counts: Count 1 sets forth a products liability claim under § 402A, Count 5 sets forth a claim for a negligent failure to warn. Federal jurisdiction over Allis-Chalmers is based on diversity.

Allis-Chalmers moves to dismiss for lack of subject matter jurisdiction and for failure to state a claim. The issues raised by Allis-Chalmer's motion are substantially similar to those raised by GE's motion. Therefore the discussion and decision on those issues will not be repeated.

### 3. *Robert Strellac*

The complaint identifies Robert Strellac as a supplier of junk electrical components containing PCB's. Strellac is named as a defendant in Counts 1—4 and 6—9.

Strellac moves to dismiss for lack of subject matter jurisdiction. The complaint recites that CERCLA imposes liability on persons who arrange for disposal of hazardous substances (¶ 72), the so-called generators of hazardous waste. The complaint identifies the supplier defendants, including Strellac (¶ 2.20), as persons who disposed of hazardous substances (¶ 73). These allegations are sufficient to invoke federal jurisdiction.

### 4. *Max Berman and Edward P. Green*

The complaint identifies Max Berman and Edward P. Green as suppliers of junk electrical components containing PCB's. Berman and Green are named as defendants in Counts 1–4 and 6–9. Federal jurisdiction over Berman and Green is based on CERCLA.

Berman and Green move to dismiss for failure to state a claim contending the plaintiffs were actively responsible for the release of hazardous substances and therefore cannot maintain an action under CERCLA.

CERCLA creates a private cause of action against statutorily defined "responsible parties" for recovery of response costs incurred by any other person. *Walls v. Waste Resource Corp.*, 761 F.2d 311 (6th Cir.1985); *State of New York v. Shore Realty Corp.*, 759 F.2d 1032, 1042 (2d Cir. 1985); *City of Philadelphia v. Stepan Chemical Co.*, 544 F.Supp. 1135 (E.D.Pa. 1982). However, at least one court has recognized that the equitable defense of unclean hands is available in a private response cost recovery action under CERCLA. *Marden Corp. v. C.G.C. Music, Ltd.*, 600 F.Supp. 1049, 1057–1058 (D.Ariz.1984), aff'd on other grounds, 804 F.2d 1454 (9th Cir.1986); *see also D'Imperio v. United States*, 575 F.Supp. 248, 253 (D.N.J.1983) ("In order to seek recovery under this section, it is necessary for the plaintiff to prove that he himself is not liable for these costs."); *contra United States v. Conservation Chemical Company*, 628 F.Supp. 391, 404–405 (W.D.Mo.1985) ("Application of the unclean hands defense in this context would turn Congressional intent on its head.") and cases cited at *Marden Corp.*, 757 F.2d 1457, n. 3.

Berman and Green assert the unclean hands defense. They contend plaintiffs were actively responsible for the release of hazardous substances and therefore cannot maintain this action under CERCLA. In response, plaintiffs concede the availability of the unclean hands defense, but assert that they were innocent victims of the release of hazardous substances on their site.

On a motion to dismiss for failure to state a claim, the allegations of the complaint must be construed in the light most favorable to the plaintiff and accepted as true. *Hochman v. Board of Education of the City of Newark*, 534 F.2d 1094 (3d Cir.1976). In the complaint the plaintiffs allege they were innocent victims of the release of hazardous substances on their site. Thus, assuming without deciding, that the defense of unclean hands is available in a private response cost recovery

action under CERCLA, the face of the complaint does not establish the defense.

■ If, on a motion to dismiss for failure to state a claim, matters outside the pleading are presented and considered, the motion to dismiss is converted into a motion for summary judgment. Fed.R.Civ.P. 12(b). Berman and Green have presented, and the Court has considered, records of the earlier EPA enforcement action charging the plaintiffs with the improper storage and handling of PCB's. Nevertheless, again assuming the availability of the unclean hands defense, this material does not establish the defense of unclean hands; rather, at most, it raises a factual issue concerning plaintiffs' participation in the release of hazardous substances.

An appropriate order will be entered.

## ORDER

AND NOW April 15, 1987 in accordance with the foregoing memorandum opinion, IT IS HEREBY ORDERED that

a) to the extent that Counts 1 and 5 allege injury as a result of the dismantling and processing of junk electrical components, these allegations are dismissed; and

b) Counts 2–4 and 6–9 do not state a claim against General Electric, Allis-Chalmers and Wagner Electric and are dismissed as to these three defendants; Counts 2–4 and 6–9 do not state a claim against Westinghouse Electric for the manufacture of electrical components and are dismissed against Westinghouse Electric as a manufacturer, but are not dismissed against Westinghouse Electric as a supplier; and

c) the motions to dismiss filed by General Electric, Allis-Chalmers, Robert Strellac, Max Berman, and Edward P. Green are denied in all other respects; and

d) the motion to dismiss the cross-claims of Kaiser-Nelson Steel & Salvage Cor-

poration and Wagner Electric Company filed by Allis-Chalmers is denied.