**RICHMOND, FREDERICKSBURG AND POTOMAC RAILROAD COMPANY, a Virginia corporation, Plaintiff,**

v.

**DAVIS INDUSTRIES, INC., et al., Defendants,**

v.

**CARRIER CORPORATION, et al., Third–Party Defendants.**

**Civ. No. 90–1619–A.**

United States District Court, E.D. Virginia, Alexandria Division.

March 17, 1992.

Steven K. Davidson, Steptoe & Johnson, Washington, D.C., for Richmond, Fredericksburg & Potomac R.R. Co.

Mark D. Cummings, Sher & Cummings, Arlington, Va., John J. Mullenholz, Mullenholz & Brimsek, Washington, D.C., for Davis Ind. and Benjamin Ettleman.

Thomas J. O'Brien, Morgan, Lewis and Bockius, Washington, D.C., for Potomac Elec. Power Co.

Matthew J. Regan, U.S. Dept. of Justice, Torts Branch, Civ. Div., Washington, D.C., Richard Parker, Asst. U.S. Atty., Alexandria, Va., for Department of Defense, Defense Logistics Agency and the U.S.

Thomas J. Curcio, Alexandria, Va., for Fred Bonnett.

John Hardin Young, Porter, Wright, Morris & Arthur, Washington, D.C., for Burton Davis and Marvin Davis.

Robert G. Watt, Watt, Tieder, Killian & Hoffar, McLean, Va., for M.C. Dean Elec. Contracting, Inc.

William Gerard McMurtrie, William McMurtrie, Fairfax, Va., for E.C. Ernst Co.

Paul Terrence O'Grady, James Q. Pope, Falls Church, Va., for Seal & Co., Inc.

Roger C. Jones, Braude & Margulies, Washington, D.C., for Singleton Elec. Corp.

Patrick Charles Jordan, Allen, Johnson, Alexander & Karp, Washington, D.C., for Truland Systems Corp.

Brian L. Buniva, Mezzullo & McCandlish, Richmond, Va., for Virginia Elec. and Power Corp.

Andrew Greenleaf Lawrence, Fairfax, Va., for University of Maryland.

Charles Morton English, Jr., Ober, Kaler, Grimes, & Shriver, Washington, D.C., for American Tel. & Tel. Corp. and Western Elect. Co., Inc.

Richard Franklin Neel, Jr., Dewey Ballantine, Ellen Tenenbaum, Washington, D.C., for Chesapeake & Potomac Telephone Company of District of Columbia.

Patrick Michael McSweeney, McSweeney, Burtch and Crump, Richmond, Va., Ara Loris Tramblian, Arlington, Va., for Arlington County of Virginia.

Dennis R. Carluzzo, Montedonico & Mason, Fairfax, Va., for Howard University.

Patricia Fettmann, Fettmann & Tolchin, Fairfax, Va., for the District of Columbia.

Marshal Heindel Brooks, Stohlman, Beuchert, Egan & Smith Chartered, Washington, D.C., for Nat. R.R. Passenger Corp. and Washington Terminal R.R., Inc.

Janet R. Landesberg, Washington Metropolitan Transit Authority, Washington, D.C., for Washington Metro Area Transit Authority.

Douglas Spaulding, Reed, Smith, Shaw, McClay, Washington, D.C., for Carrier Corp.

C. James Williams, III, Morris & Morris, Richmond, Va., for Whirlpool Corp., Arkla Ind. and Monsanto Co.

Arthur Pearlstein, Beltsville, Md., for United Rigging & Hauling.

Ellen R. Lokker, McLean, Va., for Carrier Corp.

Barbara Wahl, Arent, Fox, Kinter, Plotkin & Kahn, Washington, D.C., for Washington Gas & Light.

James Anklam, Jones, Day, Reavis & Pogue, Washington, D.C., for Dynaelectric Co.

## MEMORANDUM OPINION

ELLIS, District Judge.

In this case, a landowner, Richmond, Fredericksburg and Potomac Railroad Company ("RF & P") sued numerous defendants for dumping hazardous waste at its scrap recycling and disposal site, claiming the defendants were liable for cleaning up the site under CERCLA, 42 U.S.C. § 9607, and Virginia common law. One of the defendants, Washington Gas, allegedly sent to RF & P's site gas air conditioners that leaked PCBs while being stored, handled, and destroyed for recycling. Washington Gas, as a third-party plaintiff, has now sued Carrier Corporation ("Carrier"),[1] the manufacturer of some of the gas air conditioners that Washington Gas allegedly sent to RF & P's site, claiming contribution or indemnity under the state law theories of negligence and strict liability. The matter is now before the Court on Carrier's motion to dismiss the third-party complaint.

The essence of Washington Gas's third-party complaint is that if Washington Gas is liable to RF & P for property damage at the site caused by the leakage of hazardous substances contained in the gas air conditioners, then Carrier is liable to Washington Gas for Carrier's portion of the damage. Specifically, the third-party complaint alleges that, under the Virginia common law theories of negligence and strict liability, Carrier must either contribute to any amount Washington Gas pays RF & P for the clean-up of the site, or indemnify Washington Gas for the amount of damage caused by Carrier's air conditioners. After hearing oral argument on this matter the

---

1. The third-party complaint originally named three third-party defendants, but the other two third-party defendants have now settled.

Court denied Carrier's Rule 14(a) motion to strike the third-party complaint [2] and took the Rule 12(b)(6) motion to dismiss under advisement. Having now fully reviewed the parties' briefs on the motion to dismiss, and for the reasons set forth below, the Court grants in part and denies in part Carrier's motion to dismiss.

*Analysis*

A. Strict Liability

▪ Washington Gas invokes two strict liability theories in Count IV of its third-party complaint. Both theories fail. First, Washington Gas relies on § 402A of the Restatement (Second) of Torts in alleging that Carrier's equipment was defective in design and/or construction and that Carrier failed to provide adequate warnings about the risks involved in storing, handling, and destroying the air conditioners. This theory fails because "Virginia law has not adopted § 402A of the Restatement (Second) of Torts and does not permit tort recovery on a strict-liability theory in products-liability cases." *Sensenbrenner v. Rust, Orling & Neale,* 236 Va. 419, 374 S.E.2d 55, 57–58 n. 4 (1988). Therefore, Washington Gas's claim of strict liability based on § 402A must be dismissed.

▪ Second, Washington Gas alleges that Carrier is strictly liable to it for any damages that may be awarded to RF & P because PCBs are "abnormally dangerous substances". *See* Restatement (Second) of Torts § 519. This theory is also fatally defective. Under § 519, which is applicable in Virginia, "[s]trict liability attaches only to abnormally dangerous activities", not substances. *Arlington Forest Assoc. v. Exxon Corp.,* 774 F.Supp. 387, 389 (E.D.Va.1991) (concluding that the Virginia Supreme Court would apply §§ 519 and 520 as the liability standard for whether the leakage of gasoline from underground storage tanks warrants the imposition of common law strict liability). *See also Indiana Harbor Belt R.R. Co. v. American Cyanamid Co.,* 916 F.2d 1174, 1181 (7th Cir. 1990) ("ultrahazardousness or abnormal dangerousness is, in the contemplation of the law at least, a property not of substances, but of activities"). Importantly, "[i]f the rule were otherwise, virtually any commercial or industrial activity involving substances which are dangerous only in the abstract automatically would be deemed as abnormally dangerous. This result would be intolerable." *City of Bloomington, Ind. v. Westinghouse Elec. Corp.,* 891 F.2d 611, 615–17 (7th Cir.1989) (citation omitted).

▪ Nor is the § 519 claim saved by shifting the focus from the toxic substances contained in Carrier's gas air conditioners to Carrier's activity—manufacturing gas air conditioners containing PCBs. Strict liability for use of a product cannot be imposed on the manufacturer. To hold otherwise converts the manufacturer into an insurer. *See City of Bloomington,* 891 F.2d at 614 ("Cases requiring [strict] liability impose liability for the ultrahazardous activity as a result of the use of the product. To recognize liability of a manufacturer ... would virtually make them the insurer for such products [containing] ... hazardous chemicals .. even though such products are not negligently made nor contain any defects."). And even if Carrier could be held liable for the storing and disposing of the air conditioners, § 519 is inapplicable to that activity for it is not ultrahazardous. While Virginia courts deem some activities ultrahazardous,[3] it is also well-settled that an activity is not ultrahazardous if the high degree of risk of

---

**2.** Carrier's motion to strike the third-party complaint contends that (i) delay and confusion would be created by trying the state law claims in the third-party complaint together with the central issue in RF & P's complaint, the federal CERCLA claim, and (ii) prejudice would arise if Carrier were required to complete its discovery during the brief period of time left for discovery under the Court's schedule. The Court, after considering these arguments, granted additional time for discovery and denied Carrier's motion to strike the third-party complaint, without prejudice to refiling it at a later time, if appropriate.

**3.** *See M.W. Worley Constr. Co. v. Hungerford, Inc.,* 215 Va. 377, 210 S.E.2d 161, 163–64 (1974) (blasting is considered an abnormally dangerous activity because "it is impossible to predict, with certainty, the extent of severity of a blast"); *Laughon & Johnson, Inc. v. Burch,* 222 Va. 200, 278 S.E.2d 856, 859 (1981) (same).

injury from the activity can be reduced with the exercise of reasonable care. *See Philip Morris, Inc. v. Emerson,* 235 Va. 380, 368 S.E.2d 268 (1988) Thus, the Supreme Court of Virginia has held that handling and disposal of pentaborane, a highly toxic chemical,[4] was not an occasion for the application of § 519 strict liability because the activity could have been conducted safely had reasonable precautions been taken. *Id.* 368 S.E.2d at 282. So, too, here the high risk of injury associated with the handling, storage and disposal of products containing PCBs could have been eliminated through the exercise of reasonable care. Thus, the Court is satisfied that the Supreme Court of Virginia would hold that the manufacture, storage and disposal of air conditioners containing PCBs are not abnormally dangerous or ultrahazardous activities.[5] Accordingly, Washington Gas's claim of strict liability on the basis of § 519 must be dismissed.

## B. Negligence

Washington Gas alleges in Count I of the third-party complaint that Carrier (i) negligently manufactured the air conditioners that released hazardous substances, (ii) negligently failed to ensure proper disposal of the equipment to prevent the discharge of hazardous substances and (iii) negligently failed to warn recipients of the air conditioners of the presence of such hazardous substances. As the parties' arguments reflect, the essence of this claim is Carrier's alleged negligent failure to warn. Before addressing the merits of Washington Gas's negligent failure to warn claim, however,

the Court must first address the threshold issue of privity. If privity is required, but lacking, Washington Gas has no cause of action against Carrier.

■ Virginia has now provided by statute that lack of privity between plaintiff and defendant is no defense in any action brought against the manufacturer or seller of goods to recover damages for negligence if the plaintiff was a person whom the manufacturer or seller might reasonably have expected to use, consume or be affected by the goods. *See* Va.Code § 8.2–318. This statute eliminates the privity requirement in an action for damages for physical injury to person or property, but not in an action to recover purely economic loss damages. *See Sensenbrenner,* 374 S.E.2d at 55; *Blake Const. Co. v. Alley,* 233 Va. 31, 353 S.E.2d 724 (1987). Yet the Court is persuaded that privity is not required here because there is an alleged injury to property. RF & P asserts that Washington Gas is responsible in some measure for the damage to its property caused by hazardous substances. And Washington Gas, in its third-party complaint, contends that Carrier must share in any liability for the alleged injury to RF & P's property. Therefore, Washington Gas need not establish privity with Carrier as a prerequisite to recovery for negligent failure to warn.[6]

■ In Virginia, a manufacturer's duty to warn about dangers associated with a product's use is governed by § 388 of the Restatement (Second) of Torts.[7] *See*

---

**4.** Pentaborane is so toxic that "[b]rief exposure to five parts of pentaborane to a billion parts of air is fatal. Pentaborane is 2,000 times as deadly as hydrogen cyanide, the gas commonly used for execution in gas chambers." *Philip Morris, Inc.,* 368 S.E.2d at 271.

**5.** Significantly, "[n]o court has held that the manufacture of PCBs is an abnormally dangerous activity." *City of Bloomington,* 891 F.2d at 616 n. 7.

**6.** Even if privity is required, the Court finds that Washington Gas has adequately alleged privity with Carrier in the third-party complaint. Moreover, evidence disclosed since the filing of the third-party complaint suggests there is a question of fact about the existence of privity.

**7.** Section 388 states:

One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the sue of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier

(a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

*Jones v. Meat Packers Equip. Co.*, 723 F.2d 370 (4th Cir.1983); *Featherall v. Firestone Tire and Rubber Co.*, 219 Va. 949, 252 S.E.2d 358 (1979). Under § 388, liability exists for a negligent failure to warn only if an injury occurs during a use of the product that is reasonably foreseeable to the manufacturer. *See Featherall*, 252 S.E.2d at 367 (no duty to warn exists when the product is used " 'in an unlikely, unexpected or unforeseeable manner' ") (quoting 2 R. Hursh & H. Bailey, *American Law of Products Liability* § 8:16, at 185 (2d ed. 1974)). Manufacturers are expected reasonably to foresee (i) that a person may be injured while the product is being used for the purposes for which it was manufactured and sold and (ii) that a person may be injured while the product is being used in surroundings which are normal for the use of that product. *See, e.g., Barnes v. Litton Indus. Prod., Inc.*, 555 F.2d 1184 (4th Cir.1977) (manufacturer must reasonably foresee that furniture polish may be fatally ingested by a child in a home and must adequately warn of this danger); *Spruill v. Boyle–Midway, Inc.*, 308 F.2d 79 (4th Cir.1962) (manufacturer must reasonably foresee that burning alcohol, sold almost exclusively to dentists, may be ingested by untrained assistants in a dental laboratory, causing them to lose their sight, and must adequately warn of this danger). Typically, the reasonableness of a manufacturer's foreseeability of the uses of its product is a question of fact for the jury. *See Olgers v. Sika Chem. Corp.*, 437 F.2d 90 (4th Cir. 1971).

Virginia has not squarely addressed whether a manufacturer's duty to warn under § 388 applies to the storage, handling, and disposal of products after their useful lives. Thus, this Court must determine whether the Supreme Court of Virginia would conclude that a manufacturer must reasonably foresee that storage, handling, and disposal are possible uses of its product that must be taken into account in determining the necessity for, and nature of, any warning. *See Erie R.R. v. Tomp-*

*kins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). In making this determination, the Court concludes that the Supreme Court of Virginia would find persuasive the two decisions that have addressed the specific issue of negligent failure to warn of the dangers of storing, handling, and disposing of scrap metal containing hazardous substances. *See High v. Westinghouse Elec. Corp.*, 559 So.2d 227 (Fla.Dist.Ct.App. 1989); *Kalik v. Allis–Chalmers Corp.*, 658 F.Supp. 631 (W.D.Pa.1987). Significantly, both decisions hold that manufacturers have no duty to warn about hazardous substances that may be released from a product during the product's destruction or disposal for recycling because such destruction substantially changes the product and is not a reasonably foreseeable use. *See High*, 559 So.2d at 227 (manufacturer not subject to liability for failure to warn because damage caused by an unforeseeable subsequent alteration of the product (dismantling for recycling)); *Kalik*, 658 F.Supp. at 635 (same). In *Kalik*, however, the court distinguished between storage and handling on the one hand and disposal by destruction on the other. The Court allowed the jury to decide whether storage and handling was a reasonably foreseeable use of the manufacturer's product for which the manufacturer had a duty to warn about the possible release of hazardous substances. Although not explained fully by the Court, presumably this question went to the jury because storage and handling does not alter a product, as originally manufactured, and it is possible that a jury could find that storage and handling after a product's serviceable life is a use of the product that a manufacturer should reasonably foresee. *Kalik*, 658 F.Supp. at 635; *Cf. High*, 559 So.2d at 227 (the court suggested that the question of a manufacturer's reasonable foreseeability of handling and storing junk transformers would have been a jury question because the transformers, as originally manufactured, had not been altered at that time).

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.

Accordingly, this Court concludes that the Supreme Court of Virginia would find, as a matter of law, that the destruction of Carrier's air conditioners for recycling purposes was not a use of the air conditioners that Carrier should have reasonably foreseen. Dismantling or destroying an air conditioner changes the product and any possible intended use of the product as originally manufactured. Thus, Carrier had no duty to warn of the possible release of hazardous substances that might arise from this unforeseeable use of the product. But storage and handling stand on a different footing from destructive disposal. The Supreme Court of Virginia, in this Court's view, would not find, as a matter of law, that the storage and handling of Carrier's air conditioners was an unforeseeable use. Instead, it would allow this question to be decided by the jury. Because the air conditioners were still in their originally manufactured form at the time of storage and handling, a jury could find that Carrier reasonably should have foreseen that the air conditioners would normally be handled and stored after their serviceable lives and that Carrier had a duty to warn of the possible release of hazardous substances during such handling and storage. Therefore, Washington Gas's negligence claim must be dismissed as it relates to disposal, but survives as it relates to storage and handling.

## C. Indemnity

In Count III, Washington Gas makes the bare allegation that it is entitled to indemnification from Carrier for any damages it is required to pay to RF & P. Under Virginia law, however, a claim of indemnity "must necessarily grow out of a contractual relationship." *Virginia Elec. & Power Co. v. Wilson*, 221 Va. 979, 277 S.E.2d 149, 150 (1981). Here, the third-party complaint fails to state or identify any contractual basis for Washington Gas's claim of indemnification against Carrier. Absent any allegation of an express or implied agreement that Carrier would pay Washington Gas for any damage caused by the hazardous substances contained in its air conditioners, the claim of indemnity must be dismissed.

## D. Contribution

As a separate basis for recovery, Washington Gas contends in Count II that if it is held liable to RF & P, it is entitled to contribution from Carrier for Carrier's share of the damages that Washington Gas must pay RF & P. In Virginia, a party may assert a claim for contribution only when the person injured has a cause of action against the alleged wrongdoer from whom contribution is sought. *See Pierce v. Martin*, 230 Va. 94, 334 S.E.2d 576, 578 (1985); *Virginia Elec. & Power Co.*, 277 S.E.2d at 150. Thus, Washington Gas's claim for contribution is valid only if RF & P has a viable cause of action against Carrier. Although it is possible that RF & P may have a claim against Carrier, the Court is doubtful that Carrier's alleged liability for negligently failing to warn of the dangers inherent in storing and handling the air conditioners extends to RF & P. At this early point in the case, however, the record has not been fully developed on this issue. Thus, the claim for contribution must go forward. *See Adams v. Bain*, 697 F.2d 1213, 1216 (4th Cir.1982) ("A complaint should not be ... dismissed merely because the court doubts that the plaintiff will ultimately prevail[.]").

An appropriate Order will enter.