BARKETT, Circuit Judge,
dissenting:
Although conceding that no binding Florida precedent is directly on point, the majority claims that its resolution of this case represents “how the Florida Supreme Court would rule on the issue if the issue were considered.” Jennings v. BIC Corp., 181 F.3d 1250, 1255 (11th Cir.1999). I respectfully dissent both because existing Florida law points to a conclusion opposite to that reached by the majority on the merits and because if any debate exists on how the Florida Supreme Court would rule, we should simply ask that court for a definitive resolution through the procedure established for that purpose. There is no reason to decline to certify this question of pure Florida law to the Florida Supreme Court so that Florida judges can determine the parameters of Florida law.

A. Strict Liability

The majority offers two grounds to support its conclusion that no claim lies against BIC in strict liability, neither of which stand up to scrutiny. First, as the majority explains, the question of whether a design is defective is appropriately answered with reference to an “objective standard” that involves “consideration of the ordinary consumer’s expectations,” or, put another way, consideration of the “normal public expectation of danger.” See Hobart Corp. v. Siegle, 600 So.2d 503, 505 n. 4 (Fla.Dist.Ct.App.1992) (including “common knowledge and normal public expectation of danger” among the criteria for determining whether a product is defectively designed). In answering this question, the majority asserts that the “normal public expectation of danger” relating to lighters would not include the likelihood of fires started by careless children. Howev *1261 er, given that, by the majority’s own admission, “140 people, including 125 children, are killed each year in fires caused by children playing with lighters,” Jennings, 181 F.3d at 1257 (citing Consumer Federation of America, Up in Flames: The Deadly Consequences of Children Playing with Cigarette Lighters 3 (1987)), it is hard to credit the conclusion that the “normal public expectation of danger” would not include the risk of fires so caused, and that expectation of such a risk would arise only if one adopted “a subjective, child’s-perspective standard.” Id. To the contrary, in light of the high casualty rate and the obviousness of the danger, a jury could well find BIC lighters ,to-be defectively designed under an objective, ordinary consumer standard.
Similarly, the majority’s argument that High v. Westinghouse Elec. Corp., 610 So.2d 1259 (Fla.1992), precludes a jury from determining whether strict liability applies is premised on a misreading of High and of Florida law in general. The majority posits that “a manufacturer is [strictly] liable only when the product is used as intended,” and asserts, on the basis of High, that a child’s use of a cigarette lighter to set fire to things that are not intended to be burned is an unintended use under Florida law. Jennings, 181 F.3d at 1256. The High court did hold, rightly, that a product manufacturer can be held strictly liable when injury results from an “intended use[ ]” of the product at issue. High, 610 So.2d at 1262. However, the High court neither defined the term “intended use” nor did it exclude reasonable foreseeability as an element thereof. Rather, limiting itself to the specific facts before it, the court concluded only that unsealing and dismantling the defendant’s product — an electrical transformer — in order to salvage junk components was not an intended use of the product and thus that strict liability did not apply for injuries caused by the hazardous fluids that were released when the transformers were dismantled. Id. (finding, “under these facts, that strict liability does not apply”).[1]
High thus provides no support for the majority’s assertion that, under Florida law, manufacturers are not strictly liable for injuries caused by.reasonably foreseeable uses of their products. To the contrary, the High majority cites with approval two cases that acknowledge that a determination as to the “intended use” of a product involves an inquiry into “reasonably foreseeable uses.” See id. at 1261—62 (citing Kalik v. Allis-Chalmers Corp., 658 F.Supp. 631 (W.D.Pa.1987); Wingett v. Teledyne Indus., Inc., 479 N.E.2d 51 (Ind.1985), overruled on other grounds by Douglass v. Irvin, 549 N.E.2d 368 (Ind.1990)).
Applying the reasonable foreseeability standard in Jennings’ case would yield a different result than that reached by the majority. The very statistics cited by the majority regarding the annual number of deaths caused by children playing with lighters support the conclusion that the child’s use of the lighter was reasonably foreseeable and that BIC could therefore be held hable for the damages resulting therefrom. But to the extent that the application of strict liability to such a reasonably foreseeable use of the defendant’s product can be considered an open question of Florida law, I would at least certify *1262 it to the Florida Supreme Court for resolution.

B. Negligence

Turning to the negligence analysis, the majority concedes the first element of the negligence test, that BIC owed a duty of care to Selma Jennings’ child. Jennings, 181 F.3d at 1257. The duty element is a question of law which is resolved by determining “whether the defendant created a generalized and foreseeable risk of harming others.” Stazenski v. Tennant Co., 617 So.2d 344, 346 (Fla.Dist.Ct.App.1993). The majority acknowledges that children fall within the foreseeable zone of risk, recognizing, as noted earlier, that many accidents caused by children playing with lighters result in the deaths of children and adults alike.
Having determined that a duty of care exists, the majority then concludes, as a matter of law, that BIC met its duty, noting that Florida courts have held that manufacturers need not go to “extreme lengths” or “take all possible measures” to protect foreseeable users of its products, and that BIC fulfilled its duty of care by placing warning labels on the lighters. Jennings, 181 F.3d at 1256. However, Jennings makes no assertion that BIC should have gone to “extreme lengths” or taken “all possible measures” to make its products safe from children. The claim is that BIC, knowing that children would acquire its lighters and cause injury with them, was negligent in failing to incorporate a child-safety feature into the design. To sustain a cause of action for negligence, Jennings must establish that: (1) the defendant had a duty to protect the plaintiff; (2) the defendant breached that duty; and (3) the defendant’s breach was the proximate cause of the plaintiffs injuries and resulting damages. See Lake Parker Mall, Inc. v. Carson, 327 So.2d 121, 123 (Fla.Dist.Ct.App.1976). The question before us is whether BIC breached the duty of care the majority concedes BIC owed the plaintiff.
A breach is the failure to use due care to do what a reasonable and prudent person would ordinarily have done under the circumstances. See De Wald v. Quamstrom, 60 So.2d 919, 921 (Fla.1952). With respect to a manufacturer, negligence arises when the failure to use reasonable care results in an unsafe product. Determining whether the manufacturer used reasonable care involves a balancing test wherein the likelihood and the gravity of the potential harm are weighed against the burden of the precaution necessary to avoid that harm. See Auburn Machine Works v. Jones, 366 So.2d 1167, 1171 (Fla.1979).
The majority’s conclusion in this case'— that, as a matter of law, a warning was sufficient and that anything more would represent an “extreme” measure — -has no basis in Florida law. As the majority recognizes, there are no Florida Supreme Court cases directly on point. It cites only two cases from the Florida. District Court of Appeals, neither of which are analogous to the facts here. Vic Potamkin Chevrolet, Inc. v. Horne, 505 So.2d 560, 562 (Fla.Dist.Ct.App.1987) was a negligent entrustment case requiring a totally different analytical approach than that of a claim for negligent design. In Potamkin, the plaintiff sued a car dealer for letting an incompetent driver buy a car and drive it away. The buyer lost control of the vehicle and hit a tree, injuring her passenger. The passenger sued, and the court found that the car dealer had fulfilled its duty of care by verifying that the buyer had a valid driver’s license. This case is inapposite to the issue presented here. In Jennings’ case, the issue is not whether a seller failed to evaluate the fitness of a purchaser, but rather whether a manufacturer is required to do more than warn against the possible misuse of its product by people (in this case, children) to whom it owes a duty of care.
In Bobine v. Gilley’s Bronco Shop, Inc., 488 So.2d 176 (Fla.Dist.Ct.App.1986), the plaintiff sued for injuries sustained when he was thrown from a mechanical bull in a *1263 bar. The bar had placed mattresses around the bull to cushion the fall of riders but the mattresses were not adequately pushed together, and when the appellant was thrown off, he hit his head on the floor. The claim was that the mechanical bull was defective because the manufacturer did not supply adequate landing gear and that, because the bull was inherently dangerous, strict liability should apply. The court held that it was not necessary for the manufacturer to provide landing pads with the mechanical bull. It analogized such a claim to that of requiring manufacturers of power saws or welding torches to provide safety glasses or other guards and found that this additional equipment need not be required. A warning that such additional equipment is necessary suffices unless the safety device can be made an “integral part” of the product. Id. at 178. There is no claim here that the manufacturer should have provided additional equipment along with the lighter but rather that the manufacturer failed to use reasonable care by not developing a safety lock — which would be an “integral part” of the product — to make it more difficult for a child to use it, as, for example, pharmaceutical drug companies did in putting child-proof caps on their containers. It is for a jury to decide, based upon appropriate evidence, whether disposable lighters could incorporate child safety devices at a reasonable cost and without undue burden. And again, where any debate exists as to Florida law, that debate should be resolved by the Florida Supreme Court.
Finally, I disagree with the majority’s conclusion that the district court did not err in refusing to give a jury instruction on-intervening cause. The appellants’ requested instruction provided that, “[njegli-gence may also be a legal cause of injury even though it operates in combination with ... some other cause occurring after the negligence occurs if such other cause was itself reasonably foreseeable.... ” Florida Standard Jury Instruction 5.1(c) (emphasis added). This instruction recognizes that BIC could still be hable even if a later event or action (i.e., a parent leaving a lighter within reach of a small child) also played a role in the injury.
The district court’s instruction that “[njegligence may be a legal cause of damage even though it operates in combination with an act of another, some natural cause, or some other cause if such other cause occurs at the same time as the negligence ...” excluded this possibility. This instruction permitted the jury to assume that any negligence on Selma' Jennings’ part obliterated any negligence on BIC’s part. Because this instruction caused “prejudicial harm to the requesting party,” Roberts & Schaefer Co. v. Hardaway Co., 152 F.3d 1283, 1295 (11th Cir.1998), it warrants reversal.